SOPHIA A. HOUSTON v. F. W. THORNTON et al.

(Decided April 5, 1898.)

*Action Against Bank Directors—Issues—Bank Direc-*
*tors—Negligence—Liability of Bank Directors for*
*False Statements of Bank's Condition—Purchasers of*
*Stock—Summons—Statute of Limitations.*

1. In the trial of an action against the directors of a Bank for loss suffered
   by the plaintiff through the negligence of the defendants in per-
   mitting false statements of the Bank's condition to be published
   by which the plaintiff was deluded as to the value of the stock
   and misled into purchasing it, it was proper to submit issues as to
   the negligence and wrongful acts of the defendants instead of
   issues as to whether there had been fraud and misrepresentations
   on the part of the defendants.

2. The negligence of the directors of a national bank in permitting to be
   published false and fraudulent statements of the condition of the
   bank, whereby a person is misled into buying stock in the bank, is
   a wrong done to such purchaser for which the directors are liable
   directly to such purchaser and is a cause of action which does not
   pass to the Receiver of the bank upon its insolvency.

3. Directors of a national bank who, by their negligence, permit false and
   fraudulent statements of the bank's condition to be published and
   wrongful dividends to be declared, are liable to a person injured
   thereby whether or not they directly participated in the fraud by
   signing the statements or otherwise.

4. In the trial of an action against the directors of a bank based upon
   their negligence in permitting false and fraudulent statements of
   the bank's condition to be published and dividends to be declared,
   when the earnings did not justify them, the plaintiff's right to
   recover should not be restricted to one instance of negligence
   when there are many others in evidence.

5. The fact that bank directors, who left the management of the bank to
   dishonest and careless officers by whom the bank was wrecked,
   resided away from the town where the bank was located and by
   private arrangement with the other directors and officers were not
   required to give personal attention to the affairs of the bank, will
   not relieve them from liability to persons injured by their negli-

gence or justify the assumption that they could not give proper attention to their duties and ascertain the falsity of statements published concerning the condition of the bank.

6. A summons is issued when it is put out from the Clerk's office under his direction or authority and given or sent to an officer for the purpose of being served.

7. The presumption that a summons was issued on the day it bears date is not rebutted by the fact that the Sheriff's endorsement of its receipt by him is of a later date.

8. Where the Receiver of an insolvent National Bank recovered judgment against a stock-holder for an assessment under the individual liability imposed by the National Banking Act, such stock-holder's right of action against directors, through whose negligence the stock-holder was injured in purchasing and holding the stock, did not accrue until payment of the judgment.

DOUGLAS, J., dissents.

CIVIL ACTION tried before *Adams, J.*, and a jury at Fall Term, 1897, of CHATHAM Superior Court. The facts appear in the opinion. There was a verdict for the plaintiff and from the judgment thereon the defendants appealed. The plaintiff also appealed from the refusal of judgment in her favor for the amount of a judgment which had been taken against her by the Receiver of the People's National Bank of Fayetteville for an assessment under the personal liability attaching to her as a stock-holder which judgment she had not paid.

*Mr. H. A. London*, for plaintiff.
*Messrs. Womack & Hayes*, for Scott, defendant (appellant).

CLARK, J.: The issues tendered by the defendant presented the question whether there had been fraud and misrepresentation on the part of the defendants. Those settled by the Court at the close of the plaintiff's

evidence presented the inquiry whether there had been negligence and wrongful acts by which the plaintiff had been damaged. The latter were proper upon the pleadings.

The plaintiff complained that the board of directors of The People's National Bank, among whom were the defendants, in February, 1890, and at sundry other times, before and after, caused to be published reports of the status of the bank which showed it to be amply solvent, whereby the plaintiff was induced in April, 1890, to purchase eleven shares of the capital stock of said bank, whereas at the times aforesaid the bank was hopelessly insolvent, and had been so for at least five years; that the said directors either knew this to be the true condition of the bank or with proper care could have known it. The complaint is full and contains a detailed statement of the acts of negligence alleged against the defendant. The bank was declared insolvent on the 31st of December, 1890 and the receiver took charge in February, 1891. The plaintiff not only lost the whole sum ($1100) invested in the purchase of said eleven shares of the stock of the bank, but under the liability clause of the National Banking Act has been assessed 50 per cent on her stock and a judgment has been obtained against her by the receiver for $550 on that account in the Federal Court. The published statement of the bank, January 2, 1890, showed that the capital stock was $125,000, the deposits $87,300, the surplus $32,000, and undivided profits $6,795. The former cashier of the bank testified, without contradiction, that this statement was made by the order of the directors; that it was untrue; that there was no surplus, no undivided profits, and that the bank did not even have its capital stock; that, if the directors had examined the

papers they would have known the insolvency of the bank; that, at that time, the president (Moore) owed the bank between $100,000 and $120,000; that one of the directors (Thornton) owed the bank about $40,000, another director (McNeill) owed it $20,000, and Starr, another director, owed it between $6,000 and $7,000—thus between $166,000 and $187,000 being due the bank from these officials, of whom McNeill was then known to be insolvent; that Moore was also insolvent and failed in November, 1890, and Thornton in the spring of 1891; that the bank never had a finance committee; that, in November, 1889, Moore owed the bank on his unsecured paper $100,000, of which $30,000 had been due three to ten years. It is needless to go through the evidence, which shows the most culpable negligence on the part of the Board of Directors, for this is sufficiently shown by the above recited facts if nothing further had been proved. At the meeting of the directors on January 14, 1890, a dividend of 4 per cent. out of the profits was declared, all the directors being present, and the defendants voting for the declaration of the same, though this dividend, like all the other semi-annual dividends for the five years previous, was in fact paid out of the deposits and not out of the earnings.

The defendants asked the Court to charge—

1. That upon the facts in evidence the plaintiff cannot recover because of any negligence of the defendants, they being directors of a National Bank in the hands of a receiver, becomes an asset of the bank for which the receiver alone can sue, and the jury will therefore answer the second issue "No." This prayer was properly refused. The wrong complained of is not one towards the company, not any negligence in the duty to guard its interests and to comply with the re-

quirements of the National Banking Act, but a wrong to the plaintiff in permitting a false and fraudulent statement of the condition of the bank to be published, whereby the plaintiff, trusting in the truth thereof and the high character of the defendants, was misled into parting with $1100 for the purchase of eleven shares of the capital stock of the company which at that time was worse than worthless. This is not a cause of action that under any circumstances could have passed to the receiver." 3 Thompson on Corp., Sections 4304, 4132, 4144. If this action had been brought by a depositor, the settled doctrine of the law is that "if, in the pretended performance of duties imposed upon them by law, the directors of a bank used their official station to make false representations which are believed and acted upon by third parties, they are liable to respond for the injury done to the one defrauded thereby, and that the liability provided for in the National Banking Act cannot be deemed to preclude the right to maintain a common law action for deceit for such false and fraudulent representation." *Prescott* v. *Houghey*, 65 Fed. Rep., 653, 659, which distinguishes *Bailey* v. *Mosher*, 63 Fed. Rep. 488; *Delano* v. *Case*, 121 Ill., 247; 3 Thompson Corp. Section 4304. The allegations and proof as to declaring dividends out of deposits and allowing an official to borrow more than one tenth of the capital stock are not the basis of this action; if they were, then the receiver should have brought the action; but they are merely evidential to show the negligence whereby the plaintiff, not the bank, was injured and to support her action for the injury to herself.

2. That the plaintiff cannot recover unless the jury shall believe from the evidence that these defendants

participated in the fraudulent statement made by other officers of the bank, and unless the plaintiff has snown such participation the jury will answer the second issue "No." Refused, and the defendants excepted.

There was no error in refusing this prayer. The ground of recovery is not the participation of the defendants in fraud, but that by their gross negligence they permitted the statements to be put forth upon their authority showing the bank to be amply solvent, with large surplus, and the declaration of 4 per cent semi-annual dividends out of profits, when there had been no profits, as to all of which the defendants should have been informed. It was in evidence and not denied that all the directors were present when the dividend of January, 1890, was declared, and Starr alone voted no, as to whom a non-suit was entered. As was said in *Solomon* v. *Bates*, 118 N. C., 311 and reaffirmed in same case, 118 N. C., 321, and *Caldwell* v. *Bates*, 118 N. C., 323, "If false and fraudulent statements of the condition of the corporation are put forth under the authority of the directors, it is not necessary that they should know them to be such; it is their duty to know them to be true, and they are liable for damages sustained by any one dealing with the corporation, relying upon the truth of such reports." 1 Morse on Banking, Section 132, 137; *Kinkler* v. *Junica*, 84 Texas, 116. So salutary and just a rule is supported by ample authority elsewhere, and, if it were not, it is correct in itself and a just protection to which the public are entitled. It is not necessary, as the defendants asked the Court to instruct the jury, that these defendants "participated in the fraudulent statements," but if the statements were given to the public by the authority of the board of directors (which is not controverted) and were in fact false and fraudulent, and the plaintiff relying thereon

(as she had a right to do) was induced to buy stock or had made deposits whereby she suffered injury, all the directors are liable whether they "participated" in the fraud or not. *Arnison* v. *Smith*, 41 Ch. D. (L. R.) 348; 3 Thompson, *supra*, Section 4108.

The defendants further asked the Court to instruct the jury that, if they should believe from the evidence that the directors used reasonable diligence in the management of the affairs of the bank, which is such as prudent men usually exercise in the management of their own affairs of a similar nature, then the plaintiff cannot recover and the jury will answer the second issue "No." The Court gave this prayer, with this addition, to which the defendants excepted, to-wit, "Unless you should find that the defendants declared or paid a dividend at the January meeting, 1890, out of the capital stock or deposits of the bank, and not out of the earnings, and the plaintiff was induced or misled by such declaration of dividends to purchase stock in the bank, and the defendants could have by the exercise of ordinary diligence known that the dividends were paid or declared out of the capital stock or deposits of the bank, and not out of the earnings of the bank, then you should answer the second issue "Yes." The defendants cannot complain of this modification, though the plaintiff had just ground to except (if it had been necessary) that the inquiry was restricted to one instance of negligence when there were so many others in evidence. Indeed, the Court might well have told the jury that, if they believed the evidence, the defendants had not "used reasonable diligence in the management of the affairs of the bank."

4. The defendants asked the Court to charge that, if the jury shall believe that the defendants were selected

by the stockholders, knowing that their residence away from the town of Fayetteville. at which place the bank was located, rendered it impracticable for them to give close personal attention to the affairs of the bank, and that by the action of the directors and stockholders it was made the duty of the other directors to look into the daily affairs of the bank, and that these directors were to give only a general and supervisory control over the affairs of the bank; that it was not their duty to pass upon the paper discounted by the bank, but that such duty was delegated by the directors to a committee of directors known as "the discount committee," and that such delegation of powers is usual in National banks; that these directors performed all the duties assigned to them by the custom of the bank, which was well known to the stockholders; that the frauds of the officers of the bank could not have been discovered by the directors in the regular performance of their duties and without a close and critical examination into the book-keeping of the bank and the solvency of the papers held; then the plaintiff is not entitled to recover and the jury will answer the second issue "No." The defendants' exception to the refusal of this prayer cannot be sustained. The assumption of fact therein that the payment of semi-annual dividends out of the deposits for five years and the discovery of the fact that nearly the entire capital and deposits were loaned to the president and three directors, and most of it without security, could not have been ascertained by the defendants in the proper discharge of their duty, is not sustained by the evidence. It was also in evidence that one of these borrowing officials was insolvent and two others were men of bad character, which devolved upon the defendants the duty of being even more than usually diligent. On the

contrary, the evidence shows them to have left the management entirely to those officials. But, aside from this, there is no principle of law or morals that will permit the selection of non-resident directors of good characters, whose names shall be a pledge of honest management upon which the public shall make deposits and buy the stock of the bank, and then when the crush comes will excuse such directors from liability because, being non-residents, they could not give proper attention to their duties, and by private arrangement it was agreed that they should not be required to do so. Such arrangement, if it had been shown, would not have released them from their duties as prescribed by Act of Congress, nor from their common law liability for negligence or fraud. There is no allegation or proof that these defendants were guilty of fraud or had actual knowledge of the frauds, or that they knew the representations in the published reports were fraudulent. On the contrary, the basis of the action is that these defendants were men of high character, who would not participate in or connive at fraud, and for that very reason when the reports of the bank were published, the plaintiff, relying on the well known character of these defendants, trusted implicitly to the correctness of such statements and was misled, to her damage $1100, into buying the eleven shares of the capital stock of the bank, which were wholly worthless, and entailed liability on her besides. / It is no answer to this to say that the defendants themselves were also misled as to the condition of the bank and suffered loss. They had opportunity to know the true condition of the bank. They ought to have known. It was their duty to know. They should not have permitted statements to go out upon their authority as to the condition of the bank

which were untrue, and relying upon which the plain-
tiff was led into loss. It may be a hardship upon these
defendants, but it would be a greater hardship upon the
public and destructive of confidence in banks if direct-
ors of good character, whose names are useful in draw-
ing patronage, are absolved from responsibility for
fraudulent representations whereby the public are duped
and defrauded, because such directors had no actual
knowledge of the frauds and did not participate in them.
"Ignorance will not excuse when they had means of
knowledge." *Shea* v. *Mabry*, 1 Lea (Tenn.) 319, 342; *Seale*
v. *Baker*, 70 Texas. 283; *United Society* v. *Underwood*,
9 Bush (Ky.), 609.   Lord Erskine declared on a memor-
able occasion that "Morality may come in the cold ab-
stract from the pulpit, but men smart practically under
its lessons, when courts and juries are the teachers."
The Courts hold that "culpable negligence [in such
matters] is in law equivalent to fraud" (*Shea* v. *Mabry*,
*supra*) and the surest guarantee against it is the verdict
of a jury for the damages inflicted.

There are several other exceptions for refusals to give
prayers asked and to the instructions given, but what
has been said is sufficient to dispose of them.

The only remaining exception is that as to the fourth
issue the court charged ; "The action was commenced
by issuing the summons, and the summons was issued
when it was put out from the clerk's office, by direction
and under sanction and authority of the clerk, and
given to the officer for the purpose of being served.   If
it was sent out or handed to some one else to give to
the officer for the purpose of being served, this would
be an issuing of the summons, but it must leave the
office for this purpose by the direction, or under the
sanction and authority, of the clerk."   This charge is

correct and was taken from *Webster* v. *Sharpe*, 116 N.
C., 466. The presumption that it was issued when it
bears date is not rebutted by the bare fact of the date
of the sheriff's endorsement of its receipt by him. *Currie* v. *Hawkins*, 118 N. C., 593.

The Court further instructed the jury properly that
the statute of limitations having been pleaded, the burden was upon the plaintiff to show that the action was
commenced three years from December 31, 1890, which
was admitted to be the date when the statute began to
run. *Parker* v. *Harden*, 121 N. C., 57; *House* v. *Arnold*, at this term. The admission settles the date, but
it is a question of grave doubt, if the point had been
raised, whether the statute as to the plaintiff's cause of
action began to run upon the mere declaration of insolvency of the bank, December 31, 1890, and did not in
truth begin to run upon the actual discovery, later on,
(after the investigations of the receiver) that the bank
was insolvent in the Spring of 1890 at the time the incorrect statements were put forth. *Code*, Section 155 (9).

Affirmed.

DOUGLAS, J., dissents.

### PLAINTIFF'S APPEAL.

CLARK, J.: The facts are set out in the defendants'
appeal. The plaintiff alleged that in addition to the
ground of damage upon which she recovered a verdict,
she had been assessed 50 per cent. upon her stock by
virtue of the liability clause in the National Banking
Act, and she introduced a properly certified transcript
of a judgment obtained by the receiver of the bank upon
such assessment in the United States Circuit Court for
$550. It was in evidence that the plaintiff had not paid

anything on said judgment. She offered to prove that she was solvent and able to pay said judgment and is still liable therefor. This was properly excluded by the Court. Not till the plaintiff has paid the judgment will her cause of action on that account accrue, and the Statute of Limitations in favor of the defendants will begin to run from such payment.

No error.