RICHARD HEARD *vs.* PICTORIAL PRESS & others.

Suffolk.     December 4, 5, 1902. — January 16, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Corporation*, Liability of officers and directors.

The signing of a certificate by the officers of a foreign corporation, under the requirements now contained in R. L. c. 126, §§ 13, 14, stating that the assets of the corporation, consisting of copyrights and privileges, are worth more than $120,000, when they are worth less than $10,000 and this fact is known to the signers of the certificate, is signing a certificate required by law knowing it to be false, within the meaning of Pub. Sts. c. 106, § 60 (R. L. c. 110, § 58), so as to make the signers liable for the debts of the corporation.

In a suit to hold the officers and directors of a corporation liable for its debts under Pub. Sts. c. 106, § 60 (R. L. c. 110, § 58), on the ground that they signed a certificate required by law knowing it to be false, in regard to the value of the assets of the corporation, it is immaterial that the signers did not have an affirmative intention of selling stock or obtaining credit by means of the certificate, as the statute does not require this in order to hold them, and they are not relieved from liability in case they did not profess to state accurately a cash value or market value but only to give an estimated value, as their knowledge of the falsity of

the certificate must be determined by the meaning which it would convey, and which they would suppose it to convey, to the public.

In a suit to hold the officers and directors of a corporation liable for its debts under Pub. Sts. c. 106, § 60 (R. L. c. 110, § 58), on the ground that they signed a certificate required by law knowing it to be false, it is immaterial that the plaintiff who seeks to enforce the statutory liability was not deceived by the certificate and contracted the debt of which he seeks payment without having seen the certificate.

BILL IN EQUITY, filed October 29, 1900, by a creditor of a foreign corporation, for himself and other creditors, to enforce the liability of the defendants as officers and directors under Pub. Sts. c. 106, § 60, made applicable to foreign corporations by St. 1895, c. 311, and now embodied in R. L. c. 110, § 58.

In the Superior Court the case was heard upon the pleadings and a master's report by *Hardy*, J., who reported it for determination by this court.

*E. F. McClennen & J. G. Palfrey*, for the plaintiff.

*T. Hunt*, for the defendants, Denny and Morgan.

KNOWLTON, C. J. The plaintiff has recovered a judgment against the defendant corporation, and the execution issued thereon has been returned unsatisfied. He now seeks to hold the other defendants under the Pub. Sts. c. 106, § 60 (R. L. c. 110, § 58), which creates a liability on the part of certain officers of corporations "for signing any certificate which is required by law knowing it to be false." The law requiring the certificate in this case is found in St. 1891, c. 341, §§ 1, 5, St. 1895, c. 311, § 1, and St. 1897, c. 492 (R. L. c. 126, §§ 13, 14), which require that a foreign corporation doing business in this Commonwealth shall annually "make and file in the office of the secretary of the Commonwealth a certificate, signed and sworn to by its president, treasurer and at least a majority of its directors, stating the amount of its capital stock as it then stands fixed by the corporation, the amount then paid up, and the assets and liabilities of the corporation, in such form as the commissioner of corporations shall require or approve."

Acting under this statute the commissioner of corporations required the form of certificate signed by the defendants in this case. It is designed to show the financial condition of the corporation, and it presents the assets of the corporation in one column, in four items, with a place to set the amount or valuation

against each, and it shows the liabilities in the opposite column, of two items, one of which is " Capital stock, $121,550," and the other is " Balance, Profit and Loss, $48.15." . In the column of assets the last item is " Copyrights and privileges, $120,396.30," and the total footing of each column is $121,598.15. It is found that the fair market value of the copyrights and privileges did not exceed $10,000 at the time when the corporation acquired them, and that they were worth no more when the certificate was made. It is also found that all of the defendants who signed the certificate knew at the time that the fair value of this property did not exceed $10,000 although it was entered on the company's books at the value stated in the certificate.

The first question presented is whether this is a certificate required by law. It seems very plain that it is. The statute provides for a certificate showing the assets and liabilities of the corporation. It authorizes the commissioner of corporations to determine the form of the certificate, and he required the form that was used. This form, as well as the more general provision of the statute, calls for a statement of an amount or valuation against each of these items. Otherwise the certificate would furnish no valuable information of the kind contemplated by the Legislature. It does not call for an arbitrary, misleading statement of a valuation which may have been entered upon the books of the corporation without any reference to the real value of the property. This certificate was required by law to be substantially in the form in which it was signed.

The next question is whether it is false. It purports to be a statement of the assets and liabilities of the corporation. The statement in the figures against each item purports to give an amount or value which helps to make up the assets or liabilities. The item in question is of such a kind as to indicate that the amount stated is an estimate founded on opinion, but it purports to be an estimate made in good faith, representing the opinions of the signers. In fact, it represented certain property as worth $120,396.30 when it was worth less than $10,000, and the signers of the certificate knew it was worth less than that. The certificate was unquestionably false.

The third question is, Did the defendants know it to be false? On this part of the case the defendants rely largely

upon the negative findings of the master that they did not intend to sell stock, or obtain credit for the corporation by means of the certificate ; that they did not mean or intend to represent that the cash or market value of the copyrights and privileges mentioned in the certificate was the amount set against them therein, but understood and meant to represent that this was the value at which those assets were carried on the company's books.   The first finding, that they did not have an affirmative intention to sell stock or obtain credit by means of the certificate is immaterial.   The statute creates a liability if they make a false certificate, knowing it to be false.   They must be presumed to have known, and they could not help knowing, that persons were liable to be deceived by it to their detriment.   Nor is it conclusive in their favor that they did not intend to represent that the cash or market value of the property was the amount set down against it, but meant to represent that it was a valuation at which it was carried in the books. This we understand to mean that they did not profess to state accurately a cash value or market value, but only to give an estimated value.   But they must have known that the meaning of the certificate to those who should read it would be that this was an estimated value given in good faith, and that if this was a value stated on the books of the company, the books would be presumed to be kept in the ordinary way, so as to show with a reasonable approximation to accuracy the facts stated in them.   Whatever they understood by the form of the representation which they made in the certificate, they knew and could not help knowing that those who read it would understand it to mean that the copyrights and privileges were worth a great deal more than $10,000.   They knew that the property was of comparatively little value.   Their knowledge of the falsity of the certificate must be determined in reference to the meaning which the certificate would convey, and which they supposed it would convey, to the public for whom it was made. There is nothing in the finding as to their subjective view of their conduct which negatives their knowledge and understanding of the natural meaning of the certificate to those who should read it.   On the findings in the case we think it appears that they knew it to be false.

That they made it intentionally or wilfully is not denied. The defendants rely upon the finding that they had no purpose to do any one a particular injury by the signing, and they cite *Stebbins* v. *Edmands,* 12 Gray, 203 and *Felker* v. *Standard Yarn Co.* 150 Mass. 264, in which it is said that to create a liability such a certificate must be " made intentionally with a purpose to deceive." But if one makes such a certificate which is false, and known by him to be false, and which is of such a kind that it is likely at some time to be acted upon, these facts sufficiently show a purpose to deceive. The fact that the plaintiff Heard was not deceived by the certificate, and that he contracted the debt of which he now seeks payment without having seen the certificate, does not affect his rights, nor the liabilities of the defendants under the statute.

If one could make a certificate of this kind, representing property which he knew to be worth less than $10,000 as of the value of $120,000, without creating a liability under the statute, the law would seem to be little better than a trap for those who trust to certificates made in pursuance of it.

*Decree for the plaintiff.*