There was no error in the rulings of the court.

No error.

P. T. ANTHONY v. R. O. JEFFRESS ET AL.

(Filed 9 November, 1916.)

### 1. Corporations—Gross Mismanagement—Directors' Liability.

Where the directors of a corporation appoint a committee to act with and in supervision of the manager in the conduct of the corporate affairs, and the directors have met only three times during the corporate existence of about two years, first to organize, second to declare a 10 per cent dividend, and the third to appoint a receiver, the dividend declared when its liabilities exceeded its assets, and largely with borrowed money: *Held*, the directors are individually liable in damages to creditors of the corporation thus managed, whether the directors had actual knowledge of the insolvent condition or not, by reason of their negligence, fraud, or deceit.

### 2. Same—Good Faith.

Good faith alone will not relieve the directors of a corporation from liability to its creditors for damages caused them by their gross mismanagement and neglect of its affairs.

### 3. Partnership—Principal and Agent—Corporations—Gross Mismanagement —Directors—Imputed Knowledge—Actual Knowledge—Burden of Proof.

The knowledge of one partner which will be imputed to the others of the partnership must have been acquired within the agency implied from the partnership relation; and where the partnership sells goods to an insolvent and grossly mismanaged corporation, in which one of them is a director, the knowledge of the corporate affairs will not be imputed to the other; and where, after a receiver has been appointed for the corporation, the director therein assigns his claim to his partner upon a sufficient consideration, the other may recover from the individual directors his proportionate share of the debt. Under the evidence in this case the burden of proof is on the plaintiff to show the want of actual knowledge and that he acted in good faith.

HOKE, J., dissenting; ALLEN, J., concurring in dissent.

CIVIL ACTION tried at May Term, 1915, of PITT, before *Whedbee, J.*

At the conclusion of the evidence the court sustained the motion to nonsuit. The plaintiff excepted and appealed.

*Harry Skinner and Albion Dunn for plaintiff.*
*Harding & Pearce, F. M. Wooten, Ward & Grimes for defendants.*

BROWN, J.  This action is brought to recover from the defendants, directors of the corporation known as the Central Mercantile Company, damages for negligence in the management of the affairs of the corporation, and against the defendant Wooten, president of the corporation, for willful misrepresentation as to its solvency, upon the faith of which plaintiff alleges he sold a bill of goods to the company.

.. The evidence tends to prove that the corporation was organized in 1909 with these defendants as directors, or those that were not directors then, became so shortly after; that a finance committee was elected by the directors, composed of five members, which were paid for their services, and to that committee was largely entrusted the management of the company's affairs.  The evidence shows that one J. F. Davenport was general manager and that he practically and almost exclusively ran the business.  The directors, from the time the company was organized in 1909 until it became insolvent and went into the hands of a receiver, in January, 1911, met three times only; the first to organize, the second to declare a dividend of 10 per cent, and the third to have a receiver appointed.  The finance committee met weekly, but made no investigations of the company's affairs, and always approved the report of the manager.  When the dividend of 10 per cent was declared, in 1910, the liabilities of the company then largely exceeded its assets, and the money with which the dividend was paid, or the most of it, was largely borrowed.

It is useless to recapitulate all the evidence as to the mismanagement of the affairs of the corporation.  A cursory reading of the record discloses it.  The evidence tends to prove that at a time when this condition of affairs existed, the defendant Wooten represented to the plaintiff that the corporation was solvent, and upon that representation the plaintiff, being a member of the firm of Hooker & Anthony, sold the goods to the corporation.  The account for these goods after the appointment of a receiver for the corporation was assigned by T. N. Hooker to the plaintiff.  The evidence of negligence upon the part of the defendants, including Hooker, who was also a director, is too strong to need discussion.

It is immaterial whether the defendants were cognizant of the insolvent condition of the company or not.  The law charges them with actual knowledge of its financial condition, and holds them responsible for damages sustained by stockholders and creditors by reason of their negligence, fraud, or deceit.  *Pender v. Speight,* 159 N. C., 616; *Townsend v. Williams,* 117 N. C., 330; *Soloman v. Bates,* 118 N. C., 315.

While the directors are not liable for losses resulting from mistakes of judgment such as are excused in law, they are liable for losses resulting from gross mismanagement and neglect of the affairs of the corporation. Good faith alone will not excuse them when there is lack of the proper care, attention, and circumspection in the affairs of the corporation which is exacted of them as trustees.

We are persuaded that the learned judge could not have dismissed this action upon the ground that there is no evidence of negligence. It must be, as stated on the argument, that he was of opinion that, inasmuch as defendant Hooker, a director, was a copartner of plaintiff in the firm that sold the goods to the insolvent corporation, the plaintiff was fixed by reason of such partnership with whatever knowledge Hooker had or ought to have had of the corporation's affairs. We cannot agree with that view. The negligence of the directors cannot be imputed to plaintiff solely because he was a copartner in business with one of them. There is no evidence whatever that at the time he sold the goods to the corporation the plaintiff had any knowledge of its financial condition. As for that matter, it seems that Hooker himself, although a director and secretary to the board, had little knowledge of the true condition of the corporation that he was supposed to serve.

We do not gainsay the general rule resulting from the unity of a partnership, that notice to an acting partner of any matter relating to the partnership affairs will operate as notice to the firm except in case of fraud. We do not dispute the established doctrine of the law that imputes to the principal and charges him with all notice or knowledge relating to the subject-matter of the agency which the agent acquires while acting as such agent and within the scope of his authority. But those principles, in our opinion, ought not to apply to this case.

It is only where the partner is acting within the scope of the partnership business and within his authority that notice to him is notice to his copartners. Knowledge obtained by a partner outside of the scope of the firm business is not imputed to his copartners. Gilmore on Partnership, p. 319.

Although the principle of agency applies to copartners, yet it is only when it can be seen that a partner is in fact acting as an agent of his copartners that he can bind them. This question is very fully discussed by the New York Court of Appeals in *Bienenstock v. Ammidown,* 155 N. Y., 47, and it is there held that "Notice or knowledge of one member of a partnership acquired in transactions outside of the partnership business conducted for his individual benefit is not constructively imputable to his copartners and imposes no implied liability upon them through the partnership relation." See, also, Story on Partnership,

p. 414. Analogous decisions are to be found in respect to the liability of a corporation for knowledge acquired by a director.

A director in a corporation is one of its officers, a part of its governing body, yet it is well settled that the mere fact that he has knowledge of a fact does not charge the corporation with notice. In order to charge the corporation with notice, the director must have acquired the knowledge officially as a member of the board and in the course of business as director or for the purpose of being communicated by him to the board. *Bank v. Savery,* 82 N. Y., 291, and cases cited; *Bank v. Carman,* 37 N. Y., 320; *Bank v. Norton,* 1 Hill, 572.

This Court has held that a corporation is not bound by the acts or chargeable with the knowledge of one of its officers or agents in respect to a transaction in which such officer or agent is acting in his own behalf and does not act in any official or representative capacity. *Bank v. Burgwyn,* 110 N. C., 267.

We have considered this case upon the theory that plaintiff was entirely innocent of all knowledge of the corporation's financial condition at the time he sold the goods to it. While the bad faith or negligence of plaintiff's partner must not be imputed to him, it at least throws upon the plaintiff the burden of proving to the satisfaction of the jury that in this matter he acted in good faith and without actual knowledge of the affairs of the corporation. *Randall v. Knevals,* 50 N. Y. Sup., 748.

Of course, the plaintiff, if he establishes the allegations of his complaint, cannot recover as damages the entire amount of the account for goods sold and delivered. He can only recover such damages as he has personally sustained by reason of the negligence of the defendant. For these damages his copartner Hooker is as much liable as any other of the defendants upon the evidence set out in this record.

The judgment of nonsuit is set aside.

Error.

HOKE, J., dissenting: I am unable to concur with the Court in the disposition made of this appeal, and believing that, by a misapplication of legal principles to the facts disclosed in the record, a grave injustice may be wrought to some of the parties litigant, I consider it not improper that I should state briefly the reason for my dissent.

In giving the controlling grounds for its conclusion, the *"ratio decidendi,"* the Court, in the close of the opinion, says: "We have considered this case upon the theory that plaintiff was entirely innocent of all knowledge of the corporation's financial condition at the time he sold the goods to it. While the bad faith or negligence of plaintiff's partner must not be imputed to him, it at least throws upon the plain-

tiff the burden of proving to the satisfaction of the jury that in this matter he acted in good faith and without actual knowledge of the affairs of the corporation. *Randall v. Knevals,* 50 N. Y. Sup., 748." And, to my mind, a casual perusal of the facts in evidence will show not only that plaintiff was not "entirely innocent of the corporation's financial condition," but that he is to be charged with full knowledge of it in so far as his right to recover on this account is concerned, and that these facts disclose further that the firm of Anthony & Hooker, in whose name and by whose right this account must be collected, if at all, did not extend its credit or make the account in reliance on anything that the defendants or either of them said about the corporation's business, but acted entirely on their own estimate of conditions.

Recurring to the record, it appears that in 1909 and 1910 and early in 1911 plaintiff and T. M. Hooker were copartners, doing a wholesale grocery business in the town of Greenville, N. C., and that during said period the Central Mercantile Company was a corporation doing a general supply business and having its store within two blocks of that of plaintiff; that the corporation had organized for its purpose in the latter part of 1908, and proceeded in the conduct of its business by electing nine directors, one of whom was plaintiff's partner, T. M. Hooker, who was chosen and served as secretary of the board; that these directors selected five of their number, styled a financial committee, who had general supervision of the business of the corporation, and one of them, J. F. Davenport, was made active manager at a salary of $1,000, and was required to give bond in the sum of $5,000 for the faithful performance of his duties, and the bookkeeper was required to give such bond in like sum. That the business went on with apparent success through 1909, the financial committee meeting once a week to examine into the affairs and management, a custom that continued during the life of the corporation, and, having appointed one of their number, regarded as a skillful accountant, to make a thorough examination of the books, he reported that his investigations disclosed a profit for the year of 17 per cent. The directors thereupon declared a dividend of 10 per cent, which was paid. The corporation continued its business through 1910, when, having become financially embarrassed, on proceedings instituted, a receiver was appointed, who collected and distributed its assets according to law. There are no facts in evidence from which the exact financial condition of the corporation at the time of declaring this dividend can be determined, but it subsequently developed that the business of the corporation did not justify a dividend at the time, and that the directors and their accountants were misled by the fact that quite a number of invoices of goods, purchased and

owed for, had not been entered on the company's books. That soon after the corporation commenced business the firm of Anthony & Hooker began selling it goods, and sold the company large quantities through 1909 and 1910, stated on the argument and uncontradicted, to amount to more than $30,000, and, at the time of proceedings instituted and receiver appointed, there was a balance due the plaintiff's firm of $2,272.50, reduced by dividend from receiver of $656.98, leaving a final balance of $1,615.52, for which this suit is brought seeking recovery against the president of the company, John L. Wooten, and the directors as individuals, for negligent management and fraudulent representations as to the company's financial condition. That on or about July, 1910, the company began to be slow in their payments, plaintiff's firm holding against it several protested checks, when Anthony, the plaintiff, and Hooker, his partner, conferring on the subject, Anthony suggested that Hooker should interview Wooten, the president, on the subject, and Anthony testifies that on coming from the interview Hooker reported to him that Wooten had given assurances that the corporation was good for any amount that would be sold it, and, as a result of such report, further sales were made, leaving on final account the balance due as stated. That in 1913, two years after appointment of receiver, Hooker having declined or being disinclined to join in the suit against the president and fellow directors, Anthony took over this account and allowed Hooker, in payment therefor, two old claims of the firm, also supposed to be bad, and entered suit, claming that he was uninformed of the business conditions and methods of the corporation and was induced to make these last sales by the assurances had from Wooten as reported to him by his partner, Hooker. There is no claim or suggestion that Hooker was endeavoring to circumvent Anthony in the matter. So far as the record shows, Anthony and Hooker are still friendly and doing business together, having become incorporated in January, 1911. Hooker himself testifies, among other things, that he acted as secretary of the board of directors, and the book containing the minutes of the meetings were kept in the safe of Anthony & Hooker. That he went into the supply store of the company almost every day, and occasionally examined their books and noted that they were not very well kept. That, as a member of the firm of Anthony & Hooker, he at first sought the business of the corporation, but when they became slow pay he and Anthony had a conference about it, and, as a result, Hooker interviewed Wooten, who told him "that the stockholders might lose something, but he did not see how the creditors could," and that he, thereupon, continued to make sales till or near the time the proceedings were instituted. That witness passed the place of business

of the company very often, at least once every day; that there was no effort made to prevent witness from learning the conditions surrounding the business of the corporation, and that, while it turned out that he did not have a full knowledge of such business, he made these sales on his own judgment, and that neither Wooten nor any of the other defendants were responsible for the giving of such credit, and that he had never concealed from Anthony, his partner, any of the facts. It further appeared that J. S. Wooten and his codefendants, other than Davenport, the manager, were men engaged in other business in the town, and that the active management of the company was, as stated, entrusted to J. S. Davenport, and he was under the supervision of the finance committee and acted under bond reasonably sufficient to insure the proper performance of his duties.

From this, a fair summary of the facts in evidence, I am of opinion that there is very little, if any, testimony to fix personal responsibility on the president and directors, and that any suit proceeding on the theory that plaintiff Anthony was entirely innocent of all knowledge of the corporation's methods and financial condition cannot for a moment be entertained. Even if he was not sufficiently put on guard by the slow pay of the company and the protest of several of its checks held by his firm when this account was made, his associate and partner was one of the corporate directors and secretary of the board, kept the book containing its minutes in the firm's safe, and knew as much or more about its affairs than the defendants, except Davenport, who was the active manager. He testifies, further, that he was in the corporation's store at least once every day, and occasionally examined its books, and that nothing was done to prevent him from looking fully into the company's affairs, and that he kept nothing back from his associate, Anthony. Under these circumstances, the knowledge possessed or acquired by Hooker was the knowledge of his firm, and Anthony, who is seeking to enforce collection of a firm debt, cannot be heard to say that the firm was entirely without notice or knowledge of conditions. In Lindley on Partnership, sec. 142, it is said: "In conformity with these principles, if a firm claims the benefit of a transaction entered into by one of its members, it cannot effectually set up its own ignorance of what that member knew, so as to be in a better position than he himself would have been in had he been dealing on his own account as a principal." And in George on Partnerships, p. 234: "As a general rule, notice to a principal is notice to all his agents, and notice to an agent of matters connected with his agency is notice to his principal. Consequently, as a general rule, notice to one partner of any matter relating to the business of the firm is notice to all the other members;

and if two firms have a common partner, notice which is imputable
to one of the firms is imputable to the other also, if it relates to the
business of that other. In conformity with these principles, if a firm
claims the benefit of a transaction entered into by one of its members,
it cannot effectually set up its own ignorance of what that member knew,
so as to be in a better position than he himself would have been in
had he been dealing on his own account as a principal." And Gilmore
on Partnerships, p. 318, and Bates on Partnership, sec. 398, are to
like effect. It is contended that knowledge of one partner that comes
to him outside of the course and scope of his business is not always
and necessarily imputed to his copartners, citing, among other cases,
*Bank v. Burgwyn,* 110 N. C., 272. The case of *Bank v. Burgwyn* was
that of an incorporated company, a separate entity, and the principle
of imputed notice is not so insistent as in case of a partnership; but,
conceding that the principle applies though in lesser degree to a partner-
ship, this knowledge of Hooker came to him in the direct course and
scope of his business. He was expressly commissioned to look into
the company's affairs, and the firm acted on his judgment. It is no
matter of surprise, therefore, that Hooker, conscious of the lack of
merit in his claim, should be disinclined to join in any such suit as
this, and the courts should not countenance it when entered by plain-
tiff, who took it over with full knowledge of conditions and paid for it
with other bad debts of the firm. Again, it is well understood that for
a recovery of this kind there should not only be a false representation,
but that the claimant should have relied on it. *Tarault v. Seip,* 158
N. C., 363; *May v. Loomis,* 140 N. C., 350. There is, as stated, no
claim or suggestion that Hooker endeavored to mislead or impose on
Anthony in any way, and Hooker swears that, in making these sales, he
acted on his own judgment and not on the representations of defend-
ant Wooten or of any one else connected with the company. He testified,
further, that when he interviewed Wooten, which he did after he and
his partner Anthony had conferred about it, all that Wooten told him
was that he did not see how creditors could lose anything. Anthony does
not give any direct evidence in contradiction of this. True, he swears
that his own partner, Hooker, told him more than this; but if he was
misled, it was his own partner that did it. I think there is no aspect
of this evidence that would justify a recovery, and that the judgment
of nonsuit should be sustained, first, because there is very little, if any,
evidence of negligence which justifies fixing the individual responsibility
contended for; second, if it is otherwise, that plaintiff Anthony, if not
sufficiently put on guard by the slow pay of the company and the
protest of several checks given by the corporation to his firm, is charged

25—172

with notice and knowledge of the corporation's methods and financial condition by the knowledge acquired and possessed by his copartner, Hooker; third, because there is no direct evidence that the goods were sold in reliance on any representations made by defendants or either of them, but that Hooker, who had the matter in charge for the firm, acted on his own judgment in making the sales which constitutes the present account and which is now sued for.

ALLEN, J., concurring in dissenting opinion.