CHAPPLE v. JACOBSON.

1. CORPORATIONS—FRAUD—LIABILITY OF DIRECTORS FOR SANCTION-
   ING UNEARNED DIVIDEND.
       In an action against directors of a corporation by a pur-
       chaser of bonds of the corporation for fraud and deceit
       in the declaration of an unearned dividend, by reason of
       which plaintiff claims to have been defrauded, the corpora-
       tion soon thereafter becoming insolvent, whether defend-
       ants were as diligent to learn the true financial condition
       of the corporation before they sanctioned the dividend,
       and whether plaintiff purchased the bonds in reliance on
       the declaration of the dividend, held, under conflicting
       evidence, questions for the jury.[1]

2. SAME.
       If directors of a corporation fail to exercise that degree
       of care in investigating the true financial condition of
       the corporation before sanctioning the declaration of a
       dividend which the law requires, they are liable to a sub-
       sequent purchaser of bonds, who relied thereon, for the
       damages sustained by him.[2]

   McDONALD, J., dissenting in part.

Error to Kent; Brown (William B.), J. Submitted
January 7, 1926. (Docket No. 40.) Decided April
30, 1926. Rehearing denied July 21, 1926.

Case by Wilbert C. Chapple against Joseph J. Jacob-
son, Hiram E. Moone, Oscar B. Wilmarth, and Joseph
Noorthoek for fraud in the sale of certain bonds.
Judgment for defendants on a directed verdict. Plain-
tiff brings error. Reversed.

[1]Corporations, 14a C. J. § 1983; [2]Id., 14a C. J. § 1971.

*Norris, McPherson, Harrington & Waer,* for appellant.

*J. T. & T. F. McAllister,* for appellees Jacobson and Moone.

*Butterfield, Keeney & Amberg,* for appellee Wilmarth.

*Ward & Strawhecker,* for appellee Noorthoek.

BIRD, C. J.    Wilbert C. Chapple, the plaintiff, is a banker at Greenville.    Defendants Wilmarth and Noorthoek reside in the city of Grand Rapids, and defendants Jacobson and Moone are residents of the city of Detroit.    All of the defendants were directors of the National Hardwood Company, a company formed by Hoffman, Day, and defendant Jacobson, to carry on lumbering operations in the State of Oklahoma.    The company issued $1,250,000 of eight per cent. bonds.    Plaintiff purchased at different times about $40,000 par value of them.    After operating two years the company went into the hands of a receiver.    Plaintiff claims that he was defrauded in the purchase of the bonds by reason of certain false statements made by defendants, also by certain of their official acts.    This suit was begun to recover the damage which he suffered.    After a very extended hearing the trial court directed a verdict for the Grand Rapids defendants, Wilmarth and Noorthoek, and by reason of the failure of plaintiff to make a case against them he directed a verdict for the Detroit defendants, Jacobson and Moone, on the theory that the jurisdiction of the court over the Detroit defendants depended upon the success of the case against the Grand Rapids defendants.    The case is here for our consideration upon two questions:

(1) Was the trial court right in directing a verdict for defendants Wilmarth and Noorthoek?

(2) If the trial court were right in directing a

verdict for them was he right in discharging the defendants Jacobson and Moone?

1. In order to determine the first question, we must review somewhat the history of the National Hardwood Company. In April, 1921, Hoffman, a Kansas City man, Day, a Wall street man, and Jacobson, a Detroit broker, organized the National Hardwood Company, with capital stock fixed at 100,000 shares of no par value. They organized under the Delaware law. They were authorized to issue $1,250,000 of eight per cent. bonds. Hoffman and Day, who controlled the timber lands to be purchased, were to receive $385,000 in par value of the bonds and all of the 100,000 shares of capital stock, in consideration for the transfer to the company of 10,000 acres of timber lands in fee and the timber rights on 60,000 acres situate in northeastern Oklahoma. This left the company $865,000 in bonds which it sold for 85 cents on the dollar. With this the company erected a saw mill, constructed 15 miles of railway, bought camp equipment, erected houses for the officers, purchased a locomotive and cars and other equipment, and commenced operating the plant in July, 1922. In September, 1923, a cash dividend of 25 cents was declared on the shares of the company. At this time the company was getting ready to place on the market 16,500 shares of the capital stock which had been recently donated to the company by Hoffman, Day, and Jacobson.

In January, 1924, plaintiff purchased $20,000 of the par value of the bonds, and afterwards, and before its failure, he purchased as many more. In May, 1924, the company defaulted on their interest payments on their bonds, and on the 17th day of July went into the hands of a receiver by order of court.

It is the claim of the plaintiff that he was deceived

in the financial condition of the company by reason of the declaration of the dividend.  He also claims that he was deceived by certain statements made by Wilmarth and Noorthoek, and that the dividend was not declared out of surplus, but that the company was insolvent at the time of the declaration of the dividend, it appearing now from the books of the company that it made a loss in 1922 of $55,583.55, and in 1923 a loss of $221,616.23.

Plaintiff offered testimony tending to show the following facts:    That both Wilmarth and Noorthoek were directors of the company when the dividend was declared; that Noorthoek was present and voted for the dividend, and that while Wilmarth was ill and not present he subsequently approved of the dividend by accepting his dividend check and signing the minutes of the meeting; that the dividend could not have been ordered had not Noorthoek voted for it, because without him there was no quorum; that the company was insolvent at the time, and that the dividend was not paid out of earnings or surplus; that directors Wilmarth and Noorthoek were indifferent to their duty as directors, and were not as diligent to learn the financial condition of the company as the law requires of directors, managing an industrial corporation; that plaintiff relied upon the fact that the dividend was declared and was thereby influenced to purchase the securities of the company. There were other facts shown along the same line, but these were the principal items shown on the dividend question.

Some of the testimony tending to show these facts was in conflict with defendants' testimony, especially as to the directors' diligence to ascertain the financial condition of the company and as to the solvency of the company.    Therefore, it became a question of fact for the jury to determine, under all the circum-

stances, whether directors Wilmarth and Noorthoek were as diligent to learn the true financial condition as the law requires before they sanctioned a dividend, and also whether plaintiff purchased the bonds in reliance on the declaration of the dividend.

It is the habit in these days for certain well-to-do men with influence in their respective communities to accept positions on boards of directors of corporations as honorary positions, and they never render any service except to sign on the dotted line, vote as requested by the one in charge, and afterwards to cash their director's check for attending the meeting. They give no thought to the affairs of the company, exercise no judgment upon questions of business policy, and make no investigation of the real financial condition of the company. It is this kind of service by directors that helps to extract such a tremendous annual toll out of the public who happen to own industrial securities. The law requires a different kind of service of them.

Mr. Justice COOLEY, in speaking of this worse than recreancy on the part of directors, said:

"The declaration of a dividend is a most emphatic assertion that the corporation is in condition to make a division of profits, and is consequently enjoying some degree of prosperity. So generally is this understood that the making of a dividend when the capital must be encroached upon for the purpose is looked upon as highly discreditable, if not absolutely dishonest and fraudulent, as involving an assertion of prosperity which, under such circumstances, would be deceptive, and tending to give to the corporation a credit to which it is not entitled. The corporation which should make such a dividend would, when the facts became known, be condemned by the public sentiment, and the officers who should participate would be looked upon as wanting in that business integrity which is essential to entitle them to public confidence." *Lockhart* v. *VanAlstyne*, 31 Mich. 76, 80 (18 Am. Rep. 156).

The case of *Smalley* v. *McGraw*, 148 Mich. 384, was one for fraud and deceit against the directors of a national bank for making false reports, by reason of which plaintiff was deceived in the purchase of stock. Mr. Justice BLAIR, in speaking for the court, said, in part:

"Directors of a bank are bound to exercise that degree of care in the business affairs of the bank that ordinarily prudent and careful men would exercise in affairs of like importance (citing *Commercial Bank of Bay City* v. *Chatfield,* 121 Mich. 641, and other cases). The liability of the directors in a case like this is independent of the national banking act, and is derived from the principles of the common law (citing cases). If the directors signing the report knew, or by the exercise of ordinary diligence in the discharge of their duties would have known, prior to signing such report, that the item 'Loans and Discounts' contained paper worth much less than its face value, which would materially affect the value of its stock, they would be individually liable to a purchaser of the stock who relied in good faith upon such report as stating the true financial condition of the bank. *Prewitt* v. *Trimble,* 92 Ky. 176 (17 S. W. 356, 36 Am. St. Rep. 586) ; *Heard* v. *Pictorial Press,* 182 Mass. 530 (65 N. E. 901) ; *Hubbard* v. *Weare,* 79 Iowa, 678 (44 N. W. 915)."

This question is considered in *Childs* v. *White,* 158 N. Y. App. Div. 1 (142 N. Y. Supp. 732). One who purchased stock in reliance upon a declaration of unearned dividends brought suit against the directors to recover his damage. Touching the duties of directors, the court said, in part:

"That directors of corporations owe a certain measure of duty not only to existing stockholders but as well to those from whom the corporation may solicit subscriptions for its stock or securities and that they are in that behalf bound to use some degree of both diligence and care in the performance of such duties as properly pertain to their office, and are liable for

negligence in failing so to do, is a proposition too well established to be now open to dispute. What is due diligence and care varies with the circumstances of each case, and it is impossible to formulate precisely general rules which will cover all states of fact. But that directors are bound to use a reasonable degree of care in the performance of those acts, which, under the circumstances, prudence would fairly seem to require them to perform is, in the light of the authorities, a lenient statement of the rule of law affecting this subject. See *Campbell* v. *Watson*, 62 N. J. Eq. 396, 426 (50 Atl. 120). The classes of actions in which the duties of directors have been defined have commonly been those based upon deceit or breach of trust. Some have arisen upon rights of action originally accruing to the corporation, but which have been prosecuted in its behalf by stockholders or by receivers; others have been actions brought by stockholders or creditors directly to their own use. But the circumstances under which the action must be pursued in the right of the corporation and those under which it may be brought for the use of the individual plaintiff (see *Niles* v. *Railroad Co.*, 176 N. Y. 119, 123, 124 [68 N. E. 142]), suggest no distinction so far as the duties of a director are concerned."

In *Ottinger* v. *Bennett*, 203 N. Y. 554 (96 N. E. 1123), another case where one had bought stock under similar circumstances, the court, by adopting the dissenting opinion of Justice Miller in the appellate division (144 N. Y. App. Div. 525, 533 [129 N. Y. Supp. 825]), said:

"A declaration of a dividend by a going concern implies earnings from which to pay it, and the publication of the fact of such declaration is certainly calculated to induce the public to believe that the dividend has been earned and that the corporation is prosperous. If, intending the public to act thereon, the defendants had made and published a report expressly stating that the dividend declared had been earned, there would be no doubt of their liability to a person thereby deceived to his injury.   *   *   * Why distinguish between a false affirmation and an

act calculated to have the same effect. Certainly the law makes no such distinction. We have had many illustrations in cases before us of the devices to deceive the public employed by managing directors who misuse their positions to promote stock speculation, and payment of dividends out of capital is a familiar one. When that is done to induce the public to purchase shares of the company and thereby create a fictitious value, upon which the wrongdoers may trade, they should be held accountable precisely as though the like deception had been practiced by actual misstatements."

Similar holdings on this question are: *Cornell* v. *Seddinger*, 237 Pa. 389 (85 Atl. 446); *Houston* v. *Thornton*, 122 N. C. 365 (29 S. E. 827, 65 Am. St. Rep. 699). See, also, note to *Marshall* v. *Savings Bank*, 17 Am. St. Rep. 100.

2. The case made against Jacobson and Moone was not disposed of on the merits, but they were released on a question of practice, which, in view of our holding, becomes immaterial and renders it unnecessary to consider question 2.

Much of the record and briefs is given over to discussion as to the value of the tangible property of the corporation and statements made by directors Wilmarth and Noorthoek. We have not considered the questions arising on the admission and rejection of proofs on those questions, preferring to consider them, if necessary, after a retrial.

The judgment of the trial court is reversed, and a new trial granted, with costs of this court to plaintiff.

SHARPE, SNOW, FELLOWS, WIEST, and CLARK, JJ., concurred with BIRD, C. J. STEERE, J., did not sit.

MCDONALD, J. (*dissenting*). I am not in accord with the Chief Justice in holding that the act of the directors in declaring a cash dividend in September, 1923, made a case for the jury as to the defendants

Wilmarth and Noorthoek.   The record does not support his assumption that they were dummy directors, and, therefore, his criticism of directors who lend their influence, but who do not direct, has no application.

The declaration charged a conspiracy to defraud against all of the directors.   In his proofs the plain-tiff failed to establish a conspiracy at least as to these two defendants.   Having failed in this, Wilmarth and Noorthoek cannot be held liable for any wrongful acts except their own.   If they are liable for con-senting to the payment of a cash dividend, it is be-cause their conduct was so grossly negligent as to amount to fraud, or because they did not use reason-able diligence and care to ascertain whether there was a surplus out of which the dividend could be paid.

The resolution declaring the payment of a cash dividend reads as follows:

"On motion of Mr. Day, seconded by Mr. Noorthoek, it was resolved that a dividend of twenty-five cents per share on the common capital stock of the National Hardwood Company, be declared payable to the stock-holders of record September 29, 1923, same being pay-able on October 1, 1923, out of the surplus of said company.   Said resolution was carried by the unani-mous vote of all directors present."

Mr. Noorthoek, as the resolution shows, was present at the meeting and the testimony is that he voted for the dividend after being assured that there was a surplus out of which to pay it.   Mr. Wilmarth was not able to attend the meeting because of sickness, but he wrote a letter advising against the payment of a dividend.   However, he subsequently confirmed the resolution by signing the minutes after it had been represented to him that there was a surplus.

If there was in fact a surplus, it will not be neces-sary to consider what diligence and care the defend-ants Wilmarth and Noorthoek used in ascertaining the

truth of the representations made to them in respect thereto. That there was a surplus is not disputed in the record. It is true that it was not created from the earnings but from stock donated to the company by directors Hoffman, Day, and Jacobson. The company realized $270,979.48 from the sale of this stock. The total dividend declared amounted to $20,825. The exact amount of the operating losses at the time this dividend was declared does not appear in the record, but it does appear that the donated stock was sufficient to pay all of the operating losses and the $20,825 dividend. Counsel for the plaintiff claim that the law of Delaware, under which this company was organized, authorizes the payment of dividends only from the accumulated profits in excess of the capital stock paid in, and that the corporation and its directors are forbidden to declare dividends except from such accumulated profits. Counsel for the defendants claim that it is immaterial where the surplus is obtained so long as it exceeds the capital and debts, and if it does it constitutes profits out of which a dividend may be paid. In this case, between these parties and on this issue, the question is not whether the dividend was lawfully declared, but whether it was the result of fraud or negligence. And on this question the important and controlling fact is that after deducting the liabilities and losses and the capital stock, there was a sufficient amount remaining with which to pay the dividend. So that the payment of the dividend did not diminish the assets of the company below the capital stock. It probably was poor business judgment for the directors to declare a dividend at a time when the company was operating at a loss, but they are not liable for that alone. They are liable only for fraud or negligence. And though there were operation losses, if there was a surplus above the capital and the debts, the company would not be in-

solvent and there would be no fraud or negligence in declaring a dividend payable out of the surplus. The facts in regard to the surplus are established by the plaintiff's audit of the company's books. They are not in dispute. The facts in regard to the dividend are matters of record concerning which there is no dispute. There was nothing for the jury to find, and, therefore, the court was right in holding the question one of law. The defendants Wilmarth and Noorthoek were not guilty of any wrong or negligence in consenting to the dividend.

Apart from the matter of the dividend, there is nothing in the record tending to show any actionable wrongful act of the defendant Wilmarth. As to him the judgment should be affirmed.

There is testimony that Noorthoek represented to the plaintiff that the company was making a net profit of $10,000 per month. This Mr. Noorthoek denied. It was a question for the jury.

In view of the testimony, whether the plaintiff relied on the alleged representations was also a question for the jury.

As to Mr. Wilmarth the judgment should be affirmed. As to the other defendants it should be reversed, with costs to the plaintiff.