DINSMORE *v.* JACOBSON.

1. CORPORATIONS—FRAUD—LIABILITY OF DIRECTORS—EVIDENCE—ADMISSIBILITY OF FAVORABLE STATEMENTS—STATUTES.

   In an action against the directors for fraud in the sale of bonds of a corporation, where there is no claim that the corporation was created as one step in carrying out or furthering the fraudulent scheme, the favorable statements made by the directors on behalf of the corporation would be within 3 Comp. Laws 1915, § 11983, requiring such representations to be in writing and signed, in the absence of proof that they were made for the purpose of personal gain.

2. SAME—ORAL AND UNSIGNED STATEMENTS INADMISSIBLE UNLESS MAKER PROFITING DIRECTLY BY SALE.

   Evidence of favorable oral and unsigned statements made by such of the directors as were not shown to be making a personal profit by the sale of said bonds should have been excluded, under 3 Comp. Laws 1915, § 11983, but evidence of such statements made by one of the directors who was profiting directly therefrom was admissible.

3. SAME—DECLARATION OF DIVIDEND WHEN INSOLVENT—EVIDENCE—TRIAL.

   The question of the declaration of a dividend when the corporation was insolvent, and such favorable statements as were found admissible, should have been submitted for the consideration of the jury.

4. SAME—GOOD FAITH INSUFFICIENT TO EXCUSE NEGLIGENT MANAGEMENT.

   In an action against the directors of a corporation for negligent management, good faith alone will not excuse them.

5. SAME—DIRECTOR NOT EXCUSED FROM PERFORMING DUTIES BY REASON OF DISTANCE HE LIVES FROM WHERE BOOKS KEPT.

   The trial court was in error in instructing the jury that in determining the negligence of the directors they could consider "the location of the director defendant, the loca-

---

[1]Corporations, 14a C. J. § 1959; [2]Id., 14a C. J. § 1982; [3]Id., 14a C. J. § 1983; [4]Id., 14a C. J. § 1956.

tion of the main office of the company and of its books, the difficulty or accessibility of the books, or the difficulty of the director in getting to the office and inspecting the books, or in determining for himself from the books the condition of the company," since when a director assumes certain duties he may not excuse nonperformance by showing that he lives a great distance from where the books are kept, or where the business is carried on.

Error to Kent; Brown (William B.), J.    Submitted April 15, 1927.    (Docket No. 54.)    Decided April 3, 1928.    Rehearing denied June 5, 1928.

Case by Stephen M. Dinsmore against Joseph J. Jacobson, Hiram E. Moone, Oscar B. Wilmarth, and Joseph Noorthoek for fraud in the sale of certain bonds. Judgment for defendants.    Plaintiff brings error. Reversed.

*Norris, McPherson, Harrington & Waer,* for appellant.

*J. T. & T. F. McAllister,* for appellees Jacobson and Moone.

*Butterfield, Keeney & Amberg,* for appellee Wilmarth.

*Ward & Strawhecker,* for appellee Noorthoek.

BIRD, J.    Plaintiff purchased $40,000 par value of the bonds of the National Hardwood Company.    He claims that he was influenced to do so by the fraudulent acts of the board and the favorable representations of the defendants, who were acting as directors of the company; that said favorable representations were misleading and false; that said company was insolvent, and soon thereafter passed into the hands of a receiver, to his great loss and damage, and he brings this suit to recover his damages, based upon the negligence of the directors in the management of the company. For a statement of the history of the National Hard-

wood Company, see *Chapple* v. *Jacobson,* 234 Mich. 558.

1. Counsel are not in accord on the question whether the following section of the statute applies to the representations made:

"No action shall be brought to charge any person, upon or by reason of any favorable representation or assurance, made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representation or assurance be made in writing, and signed by the party to be. charged thereby, or by some person thereunto by him lawfully. authorized."     3 Comp. Laws 1915, § 11983.

Both counsel rely on *Bush* v. *Sprague,* 51 Mich. 41, to support their contention.     In that case Mr. Justice GRAVES considered the statute and pointed out certain distinctions, which, in substance, were that when a conspiracy was formed to carry out an unlawful scheme and a corporation was formed as one step in further- ing that design to make profit for those making the representations, the statute had no application, but when the corporation was created in good faith and the favorable representations were made in behalf of the corporation, and not for personal gain to those making the representations, the statute did apply.

In the case under consideration the declaration al- leges a conspiracy, but counsel do not claim that it was proven.     There is no claim that the corporation was created as one step in carrying out or furthering the fraudulent scheme.     Under these circumstances the favorable statements made by the directors on be- half of the corporation would be within the statute, in the absence of proof that they were made for the pur- pose of personal gain.     Under this rule the testimony offered should have been received or rejected.

2. Complaint is made because the trial court ex- cluded from the consideration of the jury the favorable representations made by the defendants.     It is not

our purpose to go through the record and point out what statements were admissible and what were not, because no specific assignment of error has been made with reference to the rejection or admission of evidence, but it will suffice to say that if Wilmarth, Noorthoek and others made favorable statements and signed them they should have been considered by the jury. Wilmarth and Noorthoek and others made favorable statements that were not signed. These statements should have been excluded by force of the statute, unless it were shown that they were made to bring a profit to themselves. The oral and unsigned statements of Jacobson were admissible because the record shows he was making a direct profit from the sale of the stock and bonds, and that the representations were made to aid the sale of the stock and bonds. *Getchell* v. *Dusenbury,* 145 Mich. 197. The question of the declaration of a dividend when the company was insolvent, and such favorable statements as were found admissible under the rule suggested should have been submitted for the consideration of the jury.

3. Plaintiff's counsel complain because the trial court instructed the jury that they should consider the good faith of defendant in determining the question of negligence. Counsel for the defense insist that the court did not so instruct them. It is possible that the jury may have so understood the charge, although the trial court usually, in referring to the question of good faith, qualified the instruction by the words "if he exercised the care and diligence that would ordinarily be exercised under like circumstances." Without determining that question, it will be sufficient to say that the question whether the good faith of a director would be a valid excuse for negligent management was raised in *Commercial Bank* v. *Chatfield,* 121 Mich. 641, and it was there held it would not be a valid excuse. To the same effect see 4 Fletcher's Cyc., Corporations, §§ 2462-2465.

"Imprudent acts of directors or other corporate officers cannot be excused, ordinarily, because of their ignorance, inexperience, or the honesty of their intentions."    § 2464.

"It is not enough to excuse a director that no actual dishonesty is shown, nor that he was influenced by other than disinterested motives.    Good faith alone will not excuse them when there is a lack of the proper care, attention, and circumspection in the affairs of the corporation, which is exacted of them as trustees." § 2465.

See, also, *Anthony* v. *Jeffress*, 172 N. C. 378 (90 S. E. 414).

4. The trial court instructed the jury that in determining the negligence of the directors they could consider:

"The location of the director defendant, the location of the main office of the company and of the books of the company, the difficulty or accessibility of the books, or the difficulty of the director in getting to the office and inspecting the books, or in determining for himself from the books the condition of the company."

We think there was error in this charge.    When one becomes a director of a private corporation he assumes certain duties which he cannot excuse by showing that he lives a great distance from where the books are kept, or where the business is carried on.    The Michigan directors of this company knew from the beginning where the residence of the corporation was and where its business was to be carried on, and unless they were in a mood to suffer the inconvenience of travel in order to discharge their duties as directors they had no right to accept the position.    If the trial court's conclusion be the true one, a corporation might be formed for a business in Delaware, and several directors might be selected who reside in California, and if the company were negligently managed they would be immune on account of the great distance

they resided from the business and office of the corporation.

The following sections from 4 Fletcher's Cyc., Corporations, are relevant:

"On the other hand, 'it is not open to doubt,' said Justice Haight in a recent Federal decision, 'that a wilful and continued failure on the part of a director to attend meetings of the board at which the business of the bank is conducted, and to familiarize himself, to some extent, with the bank's affairs, is a violation of the duty which the common law imposes upon directors, and, if loss results therefrom, that he is liable, because such action is, in itself, a failure to exercise the ordinary care and prudence in the administration of affairs of the bank which the law imposes upon directors.' " § 2461.

See, also, *Williams* v. *Brady*, 232 Fed. 740.

"Chief Justice Bartch of the supreme court of Utah, in a well-considered decision, states the rule, as to directors of banks, that 'when sued for losses which resulted from careless or unlawful acts and unfortunate transactions, they can never set up as a defense that they did not examine the books or accounts of the bank, knew nothing about the loans or discounts, were ignorant of banking business, or that they intrusted the management and supervision of the business to the executive officers, in whom they had confidence. The welfare of the public and the interests of banking institutions alike forbid this.' Continuing, he states that 'the duties of directors are administrative, relate to supervision and direction, and when it is sought to hold them responsible for a dereliction of duty, because of which a loss occurred to stockholders and creditors, they cannot evade liability by pleading ignorance of the affairs of the institution, incompetency, or gratuitous service, or that the management of the banking business was in the hands of the cashier or other executive officer.' It is no excuse for the negligence of one officer that another officer or officers were also negligent." § 2464.

For the errors pointed out the judgment will be

reversed and a new trial granted, with costs of this court to plaintiff.

The foregoing opinion was prepared by the late Justice BIRD and is now adopted as the opinion of the court.

FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.

Justice STEERE and the late Justice SNOW took no part in this decision.