Schmidt v. Archer et al.

———◆———

No. 13,044.

SCHMIDT v. ARCHER ET AL.

PARTNERSHIP.— Death of Member.— Dissolution.—As a general rule, the death of a partner dissolves the partnership, where no express provision has been made to the contrary ; but there are exceptions to the rule, dependent upon the inherent nature of the business. of the firm, upon the contract of partnership, or upon the testamentary disposition which the deceased partner makes of his interest, with the assent of the surviving members.

SAME.— Promissory Note.— Unauthorized Signing.—Where, in an action upon a promissory note, signed by a firm and others, the execution · of the note by the firm is denied, and the court finds that its name was attached without authority, it is immaterial as to other makers what persons constituted the firm, and a finding, therefore, that the partnership was dissolved by the death of a member, even if erroneous, is harmless.

PROMISSORY NOTE.—Partnership.—Principal and Surety.— Unauthorized Signing of Firm Name.—Notice.— When Surety Not Discharged.—When the name of a firm is without authority attached to a promissory note as security for the individual debt of one partner, a third person, who subsequently signs the note, also as surety, and believing the firm's signature to be genuine, is bound to the payee, if the latter had no notice of the unauthorized character of such signature, although the payee had knowledge that the debt evidenced by the note was the individual debt of the principal obligor.

SAME.— Maker.—Endorser.—S. and another executed a note payable to the former, who then endorsed it to the plaintiff.

Held, that S. is primarily liable as maker.

From the Warrick Circuit Court.

*A. C. Tanner* and *W. W. Ireland,* for appellant.
*J. E. Iglehart* and *E. Taylor,* for appellees.

NIBLACK, J.—This action was commenced in the superior court of Vanderburgh county, and was afterwards, on a change of venue, sent to the Warrick Circuit Court, where it was tried.

The complaint was in two paragraphs. The first charged that the plaintiff, Samuel M. Archer, did business in the name of Archer & Co., and that the defendants, John K. Brouneller, E. Kane Grayville, Frederick Kiechle, Sarah R. Braun and Peter Braun, composed the firm of Brouneller, Grayville & Co.; that, on the 8th day of June, 1882, Grayville in his individual capacity, and the firm of Brouneller, Grayville & Co., together with August Schmidt, the appellant here, executed to the plaintiff, Archer, by the name and style of Archer & Co., their promissory note for the sum of $250, with five per cent. attorney's fees, payable one hundred days after date, which remained unpaid. The second alleged that the said firm of Brouneller, Grayville & Co., and the said August Schmidt, on the 12th day of December, 1883, executed their promissory note for the sum of $100, with five per cent. attorney's fees, payable to the order of the said Schmidt ninety days after date; that Schmidt had, by his endorsement thereon, assigned and transferred said note to the plaintiff, and that this note, also, remained unpaid.

Kiechle, for himself as well as for the firm of Brouneller, Grayville & Co., denied under oath the execution of both of the notes described in the complaint.

Schmidt answered in several paragraphs the first paragraph of the complaint. A demurrer was sustained to the third paragraph of his answer, and issues were formed upon the others.

The court tried the cause without a jury, and made a special finding of facts adjudged to be established by the evidence. This finding was to the effect, that, prior to the 11th

day of November, 1876, one Frederick Brouneller and the defendants Grayville and Kiechle composed the firm of Brouneller, Grayville & Co.; that, on that day, the said Frederick Brouneller died testate, leaving the defendants John K. Brouneller and Sarah R. Braun, as his only children, heirs at law and legatees surviving him; that, at the time of the death of Frederick Brouneller, the capital stock of the firm amounted to about $23,000; that of that amount he had contributed $11,000, and Grayville $5,000 and Kiechle $7,000; that the decedent, Brouneller, directed by his last will and testament that after his death the firm should continue the same as it had been, and that his said children should not withdraw their proportions of the capital stock until after the expiration of three years from the time of his death; that, conformably to this direction, it was agreed that the business of the firm should be continued as it had been previously, for an indefinite period of time; that, as the decedent, Brouneller, left no individual indebtedness, his estate was never administered upon and settled in the usual way; that previous to the death of Frederick Brouneller each partner in the firm received one-third of the profits earned by it after deducting all expenses, which included a salary of $1,200 to each one of the partners; that, under the new arrangement, each surviving partner continued to receive a salary of $1,200, and the defendant John K. Brouneller was employed as book-keeper for the firm at a like salary of $1,200 per year, he having, at the same time, charge of his sister's interests in the business of the establishment, which consisted of the manufacturing of stoves and hollow-ware; that, after the death of Frederick Brouneller, no new capital was added, except such as resulted from the accumulation of profits; that previous to his, the said Brouneller's, death, Grayville was the business and the financial manager, and Kiechle was the foreman or superintendent of the foundry; that, after his father's death, John K. Brouneller was entrusted with much of the financial management of the firm, and this was

especially so in the absence of Grayville, who spent more than half his time travelling for the firm; that Mrs. Braun received about $300 per year out of the earnings of the firm, which was paid to her as interest on her share in its capital stock; that, in October, 1883, the firm name was changed to that of Brouneller, Kiechle & Grayville; that John K. Brouneller never held himself out as a member of the old firm, nor did Mrs. Braun ever do so; that, at the time of the change of the firm name, the firm had become embarrassed, and it was agreed that thereafter no note or draft should be executed or endorsement made by the firm, or any one connected with it, except in its legitimate and exclusive business, and that only John K. Brouneller should sign the name of the firm to any note, draft, bill, check or other contract, and he only in carrying on the firm's business; that Edward Kiechle, son of the defendant Kiechle, was to be the book-keeper of the firm, to be assisted by John K. Brouneller, and that a more careful method of managing the financial business of the firm should be thereafter observed; that, on the 8th day of June, 1882, Grayville executed to the plaintiff the note described in the first paragraph of the complaint, as the principal obligor therein, which was also signed by Brouneller, Grayville & Co. and the defendant Schmidt as his sureties; that the note was given for the individual debt of Grayville, which was known to the plaintiff; that the name of the firm was signed to the note by Grayville, or by his direction, but without the knowledge or consent of the defendant Kiechle; that, on the 12th day of December, 1883, the firm of Brouneller, Kiechle & Grayville executed to the plaintiff the note counted upon in the second paragraph of the complaint, and that the defendant Schmidt signed said note as surety for the firm; that such note was given for money borrowed from the plaintiff by the firm in due course of business; that the sum of $100, being the principal due on said note, had been paid since the commencement of this suit; that in executing

the note described in the first paragraph of the complaint, Schmidt signed the same as surety for Grayville and as co-surety with the firm of Brouneller, Grayville & Co.

Upon these facts the court stated the following conclusions of law:

*First.* That by the death of Frederick Brouneller the partnership theretofore existing between him and Grayville and Kiechle was dissolved by operation of law.

*Second.* That afterwards a new partnership was formed in the same business and with the same assets between Grayville and Kiechle.

*Third.* That John K. Brouneller and Sarah R. Braun were only interested in this new partnership to the extent of their ownership of its assets as bequeathed to them by their father, and were not liable as partners.

*Fourth.* That Kiechle was not liable on the note sued on by the first paragraph of the complaint, because he never executed it, and because it was not given for anything connected with the partnership business.

*Fifth.* That Kiechle was liable for interest and attorney's fees which had accrued on the note upon which the second paragraph of complaint was based.

*Sixth.* That Grayville and Schmidt were each liable on both paragraphs of the complaint, and that Kiechle was also liable on the second paragraph of that pleading.

The court thereupon made a finding against Grayville and Schmidt for $319.70 on the note first named in the complaint, and for $15.14 against Grayville, Kiechle and Schmidt on the note last named, and, over exceptions and a motion for a new trial, rendered separate judgments accordingly. As to Peter Braun, Sarah R. Braun and John K. Brouneller, the finding, as well as the judgment, was in their favor.

Schmidt alone appeals, and assigns error:

*First.* Upon the sustaining of the demurrer to the third paragraph of his answer.

*Secondly.* Upon the conclusions of law stated by the court.

*Thirdly.* Upon the overruling of his motion for a new trial.

As, however, all the practically material questions pre-sented by the pleadings arise as well on the special finding of the facts, we deem it unnecessary to make any ruling upon the first specification of error.

More is included, both in the special finding and in the conclusions of law, than is, perhaps, necessary to a decision of the controlling questions argued in this case, but we have found it more convenient, and perhaps better, to set out both the finding and the conclusions of law substantially as we find them in the record.

It is a general rule that the death of a partner dissolves a partnership, where no express provision has been made to the contrary; but it often becomes a serious question whether a partnership has been dissolved by the death of one of its members, dependent upon the inherent nature of the business in which the firm was engaged, or upon the contract of partnership, or upon the testamentary disposition which the deceased partner makes of his interest in the firm with the assent of the surviving members. Lindley Partnership, 231, 1044; Story Partnership, 317.

Considered with reference to the facts as they were found in this case, we are not prepared to hold that the firm of Brouneller, Grayville & Co. was dissolved by the death of Frederick Brouneller; nor that John K. Brouneller and his sister did not, under all the circumstances, impliedly become members of the firm after their father's death. But however that may be, and whatever the inference on those subjects ought to be on a more elaborate or exhaustive finding of the facts bearing directly upon them, Schmidt has no reason to complain of the conclusions at which the circuit court arrived in those respects, as the answer of Kiechle put all parties adversely interested upon proof of the execution of the $250 note by the firm, and as it was found that the sig-

nature of the name of the firm to that note was unauthorized. If the name of the firm was attached to the note without authority, then it was, as to Schmidt, immaterial who else besides Grayville were members of the firm.

It is argued on behalf of Schmidt that, as Archer knew that the note in question was for the individual debt of Grayville, that circumstance put him on inquiry as to whether the firm name of Brouneller, Grayville & Co. had been placed upon the note by competent authority, and that in failing to make due inquiry on that subject, as he presumably did, he, Archer, was guilty of such *laches* as discharged Schmidt. But the authorities do not recognize so strict a rule of construction for the relief of a co-surety. A partnership may not in some—indeed, many—cases become a surety, but may in others. The question as to whether a partnership may become a surety in a particular instance may be made to depend upon many facts and circumstances not generally known to other parties, and which a hasty and even careful inquiry might not disclose.

So far as we have observed, there was nothing more in the facts before us to challenge inquiry on the part of Archer as to the binding character of the signature of Brouneller, Grayville & Co. to the note under consideration, than there was to direct Schmidt's attention to that subject.

Schmidt signed the note after the name of the firm had been attached to it. He thereby became as much, if not more, interested in knowing what relation, if any, the firm sustained to the note as did Archer.

It has been held and reaffirmed by this court, that when the name of one of two or more obligors in a bond, note or other writing obligatory, has been forged, the supposed co-obligor, whose genuine signature is attached, though a surety only, and though he signed in the belief that the forged name was genuine, is nevertheless bound, if the payee or obligee accepted the instrument without notice of the forgery. *Helms*

v. *Wayne Agricultural Co.*, 73 Ind. 325 (38 Am. R. 147);
*Hunter* v. *Fitzmaurice*, 102 Ind. 449.

. The doctrine thus recognized by this court is fairly applicable to, and really decisive of, the question under discussion.

For the purposes of this case, in the respect stated, it was
immaterial whether the name of the firm was affixed to the
note by forgery outright, or only by some person who had
no authority to use it in that way.

It is further argued on Schmidt's behalf that, as it was
made to appear by the special finding, when construed, as it
ought to be, in connection with the averments of the complaint, that he was the endorser, as well as a maker and the
payee, of the note counted on by the second paragraph of
the complaint, which was payable in a bank of this State,
his primary liability to Archer on the note, if any existed,
was as endorser, and that, as there was nothing found showing notice of the non-payment of the note, it was error to
hold him liable upon it.

As applicable to this argument it need only be said that
the responsibility of an endorser is only secondary and conditional.    He agrees to pay the note he endorses in the event
only that the maker, who is primarily liable, can not be made
to pay it.

As regards this last named note, Schmidt was sued as a
maker, and as such he was primarily liable, and properly so
held to be upon the facts before us.

There was evidence tending to sustain the special finding
of the facts made at the trial, and for that reason no cause
has been shown for granting a new trial.

The judgment is affirmed, with costs.

Filed Dec. 10, 1887; petition for a rehearing overruled Feb. 18, 1888.