COMMERCIAL BANK OF BAY CITY *v* CHATFIELD.

1. JURY—EXCUSING QUALIFIED JUROR.
    A judgment will not be reversed because the court excused a
    qualified juror who was acceptable to appellant, where it does
    not appear that appellant exhausted his peremptory chal-
    lenges, that talesmen had to be summoned, or that he was
    otherwise prejudiced.

2. BANKS—NEGLIGENCE OF OFFICERS—EVIDENCE.
    In an action by a bank against one who had been its president
    and director to recover for moneys lost to it by reason of his
    negligence in permitting the cashier to borrow a large sum
    on inadequate security, testimony that the cashier informed
    the president that he wanted the money to invest in a mining
    venture is competent as bearing on defendant's good faith.

3. SAME—INSTRUCTIONS.
    Where, in an action by a bank, one who had been its president
    and director was charged with negligence in permitting the
    cashier to borrow a large sum of money on inadequate
    security, thereby involving the bank in loss, the court prop-
    erly refused to give requested instructions, relating to his
    negligence in consenting to the loan, which ignored his claim
    that the matter was presented in the usual course of business
    to the directors of the bank, and was approved by them.

4. SAME—CONDUCT OF AFFAIRS—DEGREE OF CARE REQUIRED.
    A director and officer of a bank is bound to exercise that degree
    of care in the business affairs of the bank that a careful man
    would exercise in his own affairs of like importance; and if,
    by reason of his neglect to exercise such care, the bank loses
    money, he is liable therefor.

5. SAME—DEFENSE—GOOD FAITH.
    Where a bank has suffered loss through the negligence of an
    officer thereof in permitting the cashier to borrow a large sum
    of money on inadequate security, the mere fact that in so
    doing he acted in good faith does not relieve him from liability
    to the bank.

Error to Bay; Maxwell, J.    Submitted October 5, 1899.
Decided November 7, 1899.
    121 MICH.—41.

Case by the Commercial Bank of Bay City against Clarence B. Chatfield and Ira H. Wilder for negligence in the management of the bank's funds. From a judgment for defendants, plaintiff brings error. Reversed.

*T. A. E. & J. C. Weadock*, for appellant.

*John L. Stoddard*, for appellees.

MOORE, J. The plaintiff has appealed from a judgment rendered in the court below in favor of defendants. The case was tried by a jury. The plaintiff sued the defendants to recover the sum of $6,000, taken by defendant Wilder, who was then its cashier. The money was obtained as follows: $1,500 in September, 1895, $3,500 in April, 1896, and $1,000 in June, 1896. It is claimed that because of the negligent acts of defendant Chatfield, who was a director of the bank, and part of the time its president, he is liable to the bank for this money.

The record discloses that prior to June, 1895, defendant Wilder had been connected with various banks, and had been a bank examiner. He lived at Flint. At the request of the directors of the bank, he met them at their place of business to confer with them about becoming the cashier of the bank. In June, 1895, he was employed as cashier of the bank, and entered upon his duties. The bank had nine directors. It does not appear to have had a discount committee, who passed upon the loans before they were made, but, after the loans had been made by the cashier, they were reported to the board of directors at its next meeting. One of its by-laws required its directors to elect "a committee of three persons, whose duty it shall be to examine, at least every three months, the affairs of the bank, count its cash, and compare its assets and liabilities with the general ledger," etc., and report to the board of directors. It is the claim of the bank that Mr. Chatfield, knowing that the cashier was irresponsible, allowed him to take these various sums of money without adequate security, and without consulting his fellow directors; that

the directors did not know, until in January, 1897, that these sums of money had been taken; and, while they do not charge Mr. Chatfield with profiting by the transaction, they claim he did not exercise that care and prudence that the law required him to exercise. It was the claim of Mr. Chatfield that he did not know Mr. Wilder until he entered upon his employment as cashier; that he (Chatfield) had nothing more to do with loaning the funds of the bank or managing its assets than the other directors; that, before the first $1,500 was obtained, Mr. Wilder said he desired to borrow some money, and assign as collateral a life-insurance policy of $7,500, and would like Mr. Chatfield to hold the collateral for the bank, as it would not be proper for the cashier to do so. He says he believed Mr. Wilder was entirely responsible, and informed him it would be all right, so far as he was concerned; and later Mr. Wilder gave his note to the bank for the sum of $1,500, stating in the note the collateral was with Mr. Chatfield. He claims the money was checked out by Mr. Wilder in the usual course of business, and the note was put with the other notes of the bank. It was entered in the bank books just as all other notes were, including the collateral loan register; and this note, among others, was on the list which was read to and approved by the board of directors at its next meeting, which was substantially the course with reference to the additional loan of $3,500. He says the renewals of these notes were made according to the usual course of business, and were read to the board of directors from the list of notes; that the notes given by Mr. Wilder were among the other assets of the bank when the examining committee made its examinations. He also claims, as to the last $1,000, that he had no knowledge Mr. Wilder had taken it, or proposed to take it, until after it was taken. He insists he had no portion of the money, and had no interest in Mr. Wilder's business affairs, and that he acted in the utmost good faith; and that the other directors

knew, or should have known, about these loans to Mr. Wilder.

The first assignment of error relates to the excusing of a juror for cause when he was not disqualified. The record does not show that because of this act the plaintiff was prevented from having a jury drawn from the regular panel, or that it had exhausted its peremptory challenges. It is not shown it was prejudiced by the fact that the juror was excused. The case is ruled against the appellant by *Atlas Mining Co.* v. *Johnston*, 23 Mich. 36; *People* v. *Carrier*, 46 Mich. 442; *Torrent* v. *Yager*, 52 Mich. 506; *People* v. *Barker*, 60 Mich. 277 (1 Am. St. Rep. 501); *People* v. *Aplin*, 86 Mich. 393.[1]

Plaintiff sought to show that Wilder informed Chatfield he wanted the money to put into a mining venture, but was not permitted by the court to do so. We think the testimony was competent, as bearing upon the good faith of Mr. Chatfield, and whether he had exercised the care and prudence required of a director in approving a loan.

Exception was taken to the remarks of the court during the trial, which are said to have prejudiced the plaintiff. As the case must be reversed for other reasons, which will appear herein, we do not think it necessary to discuss this feature of the case, because on the new trial no such thing is likely to again occur. The rule is stated in *Hine* v. *Bank*, 119 Mich. 448.

The other questions necessary to be considered grow out of the refusal of the trial court to give certain of plaintiff's requests to charge, and to the general charge of the court. Request No. 4 reads as follows:

"If you find that the defendant Chatfield consented to the defendant Wilder's taking money from the bank upon his note, with the insurance policy mentioned as collateral, and that such collateral was not, in the exercise of ordinary judgment, believed by said Chatfield to be good for such amount of money, then, for just so much as you find was permitted to be taken, you will find a verdict for the plaintiff."

---

[1] *Brennan* v. *O'Brien*, *ante*, 491, is to the same effect.

The court refused to give this request, and several others, which read much like it. We think this refusal was proper, for the reason that the requests ignore the claim of defendant Chatfield that the loan was presented in the usual course of business to the board of directors, and approved by them. If Mr. Chatfield's claim is true, he cannot be held liable for the negligent acts of the other directors, if the acts were negligent.

The court refused to give the following requests:

"As a director and president of the bank, the defendant Chatfield was charged with a duty of fidelity and prudence such as a careful man would exercise in his own affairs of like magnitude and importance; and if you find that, by reason of his neglect to exercise such fidelity and prudence, the bank has lost, then you will find the amount, and for such amount a verdict for the plaintiff.

"Mr. Chatfield, as director, was required to exercise such degree of supervision and diligence as the situation and nature of the business of the bank required. It was his duty to watch over and guard the interests committed to him. In fidelity to his oath, and the obligation he assumed, he should do all that a prudent and careful man ought to do for the protection of the interests of others intrusted to his charge; and if he failed to do this, and by reason of such failure the bank suffered a loss, you will find the amount of such loss, and a verdict therefor for the plaintiff."

The court charged the jury:

"There has been much law cited here in this case on both sides of it, and I find myself unable to agree with the attorneys on either side; and I charge you, as a matter of law, that if Chatfield acted in good faith, believing that Wilder would pay that note, and was fairly responsible for it, that he is not liable. * * * Now, gentlemen of the jury, you will retire to your room, and determine the simple question if Mr. Chatfield, in this matter, has acted in good faith. If he did, you will find a verdict in his favor."

We think the court erred in his understanding of the law. We also think counsel's requests ignore the claim

of defendants that the loan to Wilder came to the knowledge of the other directors, and was ratified by them. As before suggested, Mr. Chatfield can be held only for his own negligence, and is not liable for the negligence of his co-directors. If the requests had been modified so as to allow the jury to take cognizance of the defendants' claim, by way of defense, that the directors had knowledge of the loan, and ratified it, they should have been given as a correct statement of the law. *Briggs* v. *Spaulding*, 141 U. S. 132; *Stearns* v. *Lawrence*, 28 C. C. A. 66, 83 Fed. 738; *Dykman* v. *Keeney*, 154 N. Y. 483; *Williams* v. *McDonald*, 42 N. J. Eq. 392; *Williams* v. *McKay*, 46 N. J. Eq. 25; *Horn Silver Mining Co.* v. *Ryan*, 42 Minn. 196; *First National Bank of Sturgis* v. *Reed*, 36 Mich. 263; Ang. & A. Corp. (11th Ed.) § 314; 3 Thomp. Corp. § 4104; 1 Reid, Corp. Finance, § 223; Elliott, Priv. Corp. (2d Ed.) § 239. While we do not regard it as error that the requests, as framed, were not given, for the reason before stated, we do think it was error for the court to say, in effect, that, if Mr. Chatfield acted in good faith, he would be excused from liability, whatever his negligence.

We do not deem it necessary to discuss the other questions. Judgment is reversed, and new trial ordered.

The other Justices concurred.