## CASTETTER *v.* BARNARD.

[No. 14,333.   Filed December 23, 1932.   Rehearing denied March
17, 1933.   Transfer denied February 14, 1934.]

Charles E. Henderson, Laurens L. Henderson, Ephriam O'Hara, Edgar M. Blessing, and A. J. Stevenson, for appellants.

U. S. Lesh, R. L. Lowther, James E. Lesh, A. E. Schmillinger, and Otis Gulley, for appellee.

NEAL, J.—This action was instituted by the Tuxedo State Bank against Roy E. Castetter, cashier of the named bank and London and Lancashire Indemnity Company of America, surety on Castetter's bond running to the bank as obligee. After the filing of the complaint a receiver was appointed for the bank and he was substituted as plaintiff.

The amended complaint consists of three paragraphs. The first two paragraphs are practically the same. The allegations are to the effect that Castetter, while in the employ of the bank, and while in the performance of his

duties as cashier, either directly or in connivance with others unknown to the plaintiff, embezzled, secreted, and wrongfully misappropriated $37,000.00 of the bank's funds under the guise of having made loans to himself, his relatives, and other parties and taking their notes in evidence thereof.

The third paragraph is on the theory that Castetter did not faithfully and honestly discharge his duties as such cashier, thereby causing a breach of the bond in that he in person and with the aid, cooperation, and connivance of others committed various and divers acts of misappropriations and made or caused to be made fraudulent loans thereof to himself, his relatives, business associates, and various others, who were, at the time of the making the loans, insolvent, of which he had knowledge or should have known, and without requiring adequate security for the bank for such loans (enumerating them) thereby causing loss to the bank.

Each defendant filed a first paragraph of answer in general denial and each a second paragraph, alleging that Castetter paid $9,500.00 to the bank in full and final settlement of any claim the bank had against him. Plaintiff replied to each affirmative paragraph in general denial.

Trial was had before the court. Pursuant to written request the court made a special finding of facts and stated its conclusions of law thereon in favor of the plaintiff and rendered judgment accordingly.

Errors relied upon for reversal: (1) Error in the conclusion of the law; (2) error in overruling motion for new trial setting forth causes; (a) that the decision of this court is not sustained by sufficient evidence; (b) that the decision is contrary to law; (c) error in the assessment of the amount of recovery, the same being too large.

A resume of special finding following the division

thereof as numbered and lettered is as follows: (1) The Tuxedo State Bank was organized pursuant to the law of Indiana with an authorized capital stock of $25,-000.00 in 1922 and had its principal place of business in a residential section in the City of Indianapolis and continued to operate as a bank of discount and deposit until about February 1st, 1928, when by order of the Banking Commissioner its doors were closed and shortly thereafter a receiver was appointed; (2) that prior to the appointment of plaintiff receiver, this action was instituted by the bank and thereafter by authority and order of the court the receiver was substituted as party plaintiff, and the pleadings altered so as to conform therewith; (3) that from the time of the opening of the bank until the middle of October, 1924, the defendant Castetter was the cashier of the Tuxedo State Bank and as such officer was in active charge of receiving moneys for deposit and making of loans, the discount of paper and other business activities conducted by the bank. Castetter was assisted in the conduct of such business and the keeping of books and records by several subordinate agents and employees, who were each and severally under his control and direction. That prior to his appointment as cashier, Castetter had had extended experience in the banking business and he was the only officer or agent of the bank who had previous experience in such business; (4) on May 10th, 1923, the defendant duly executed and delivered the fidelity bond sued upon; (5) that for a consideration the bond was duly extended from May 9th, 1924, up to and including May 9th, 1925; (6) that the defendant Castetter did not faithfully and honestly discharge his duties as cashier under the bond but was guilty of acts of negligence, unfaithfulness, and dishonesty in each of the following particulars, to wit:

That some time prior to the execution of the bond in suit, Castetter from time to time, took from the moneys and funds of the bank of which he was in possession and control as cashier, the total sum of $5,000.00. In order to take care of the moneys so withdrawn by him, Castetter induced his father to execute his note for the sum of $5,000.00 in favor of the bank; that at the time of the execution of the note and during the entire time covered by the bond in suit the father was married and owned real estate of the reasonable value of $12,000, with no incumbrance thereon. Thereafter and within the period covered by the bond, the note given by the father in evidence of the money so withdrawn by Roy E. Castetter matured and became due. At the time of the maturity thereof the maker of the note continued in the ownership of the farm and by pressing for payment the amount due thereon could have been realized, but Roy E. Castetter, unmindful of his duties as such cashier and out of consideration for his father, he accepted renewal notes from time to time without requiring security in consequence of which indulgence the bank lost $6,000.00; (b) that on or about the ——— day of August, 1923, the Ideal Dairy Company, a concern then engaged in the business of purchasing and distributing milk with the City of Indianapolis, and the McCallie brothers; viz. Ernest, W. E., Ralph, and Roy, who were also engaged in a like business, formed a partnership and conducted the business thereof under the firm name of North Side Milk Company; that at the time of this business formation the Ideal Dairy Company was indebted to the bank in the sum of $8,052.45 and by and with the consent and acceptance of the defendant, Roy E. Castetter, the McCallie brothers became the sole obligors of this indebtedness and as evidence thereof, Castetter took two notes, one for the amount of $4,206.23 executed by Ernest, Ralph, and

Roy McCallie, and the other note for $4,026.22 executed by all four brothers. Each of the notes bore date of August 24th, 1923, payable to the order of the bank, due 90 days thereafter. No security was required or received on behalf of said notes other than the personal promises of the makers thereof. Thereafter the indebtedness evidenced by the aforesaid notes were divided, each of the McCallie Brothers executing his individual note for a sum slightly in excess of $2,000.00. The notes so taken by the defendant, Castetter, were renewed from time to time by Castetter until October, 1924, without requiring payment thereof, or additional security and they were thereafter renewed from time to time until they culminated in the notes of the respective makers issued the latter part of September, 1925, as follows: Ernest, $1,914.85; W. E., $1,901.08; Ralph, $1,914.85; Roy, $2,117.32. Action was thereafter instituted by the bank against each of the makers and in February, 1928, judgments were obtained against the respective defendants for the amount due and owing. Execution issued and returned unsatisfied because no property could be found on which to levy execution.

At the time of the taking of the original notes, by defendant Castetter, the makers of said notes had no property, real or personal, other than a horse and wagon for the delivery of milk. In the formation of the North Side Milk Company, on the ——day of August, 1923, defendant, Roy E. Castetter, became the officer and agent thereof, to wit: The Secretary-Treasurer, and as such officer and as Cashier of the Tuxedo State Bank knew, or by the exercise of reasonable skill and ordinary care and diligence in the discharge of his duties, could have known of the financial responsibility of said McCallie brothers; that on account of the failure of said defendant, Roy E. Castetter, to faithfully discharge his duties as cashier of the Tuxedo State

Bank in this respect the bank sustained losses as heretofore found in this finding. The court further finds that the original credit, the subject of this finding, was extended to the said McCallie brothers by the defendant, Roy E. Castetter, during the period of time covered by the bond in suit and without first having the approval of the board of directors of said bank.

(c) On or about September 25th, 1924, the defendant Roy E. Castetter, withdrew from the moneys and funds of the Tuxedo State Bank, the sum of $3,000.00 for his own use and account. To shield and protect himself in this transaction, Castetter procured the note of W. T. Barnes, his father-in-law, in the sum of $3,000.00, payable to the order of said bank, twelve months after date, with seven per cent interest thereon, without any security other than the personal obligation of the maker. At the time of the taking of said note the said Barnes was a painter and paper-hanger with no known financial standing and the only amount that said bank or the receiver thereof has been able to realize on account of said transaction was a credit of $375.00 endorsed on said note as having been received from the defendant, Castetter, under date of December 28th, 1926. On account of the conduct on part of said Castetter in this transaction said bank and the trust estate represented by the receiver herein sustained a loss in the amount represented by said note less the credit as stated above.

(d) On July 23rd, 1924, Castetter, as cashier of said bank, loaned the amount of $5,000.00 of the funds of said bank to the North Side Milk Company and took in evidence thereof the promissory note of said milk company in said amount, payable to the order of said bank four months after date with interest thereon, without first having the approval of the board of directors of said bank and without receiving or requiring any other security except the personal endorsement of said Roy E.

Castetter and Roy McCallie, which note was renewed from time to time by the officers and agents of said bank until it culminated in the note dated Aug. 15th, 1925, for said amount of $5,000.00, which note remaining unpaid at the time of the appointment of the receiver and became a part of the assets of said bank. The North Side Milk Company afterwards passed into the hands of a receiver and was found insolvent and its business affairs wound up. The sum of $642.30 was received by said bank from the receiver of said milk company under date of January 12th, 1927, as the full and only distributive share due on account of said note. A further credit of $214.52 was received from the sale of the equity of said milk company in certain lots which it conveyed to said bank on September 21st, 1925, as security for said loans; and the balance due on said note represents a loss of the funds of said bank in the amount thereof. At the time of the making of said original loan, said Castetter was stockholder and officer in said North Side Milk Company, to wit: The Secretary-Treasurer, and he was the active agent of the milk company as well as the cashier of said bank in the making of said loan, and the loss occasioned to the bank through said loan as above stated was through the negligent, fraudulent, and illegal acts and conduct of said Castetter as above stated.

(e) On the 14th day of November, 1923, the defendant Castetter, as cashier of said bank, made a loan of the funds of said bank to E. O'Harra, Trustee, in the amount of $831.00 and took a note executed under said date for said amount and signed "E. O'Harra, Trustee," without requiring or receiving any other security except a conditional sales contract for an automobile, the proceeds realized from which was thereafter credited upon the loan as hereinafter stated. That said loan was renewed from time to time by said

Castetter so long as he remained cashier of said bank and thereafter by other officers or agents thereof until it culminated in a note dated April 14th, 1925, for the principal sum, after crediting the amount realized on the aforesaid collateral, of $655.14, which note, not having been paid at the time of the appointment of the plaintiff receiver, came into his hands as part of the assets of said bank, and has been found uncollectible. At the time of the making of said loan, said O'Harra was an officer and agent of said bank, to wit; a director and the president thereof, and no written consent thereto of the board of directors of said bank was obtained nor was any such consent endorsed on said note.

(f) On or about April 11th, 1924, the defendant Castetter, as cashier of the aforesaid bank, made a loan of its funds to E. E. Barb in the amount of $5,000.00 and received in evidence thereof the personal note of said Barb, payable to the order of said bank, without requiring any security for the payment thereof other than a certificate of 100 shares of stock in B. & O. Planing Mill, for the use of which corporation the funds in question were procured by said Barb. That thereafter said loan was renewed and evidenced by a note executed on November 27th, 1924, for said principal amount payable to the order of said bank, the note not being paid on the maturity thereof, action was brought against said Barb, in which proceedings judgment was rendered and upon execution being issued, was found uncollectible, so that the amount of said loan was thereby lost to said bank.

(g) On the aforesaid day of April 11th, 1924, the defendant, Castetter, as cashier of said bank made a loan in the amount of $5,000.00 of the funds of said bank to Grace E. Barb, who was the wife of E. E. Barb referred to in the proceeding finding, and was insolvent at the time. Said loan was renewed in said amount by

said Castetter as cashier of said bank on or about September 1st, 1924, and finally culminated in a renewal note under date of March 2nd, 1925, for the sum of $4,250.00. The loan was made by Castetter without requiring any security for the payment thereof other than the assignment of 50 shares of the common stock in the B. & O. Planing Mill and the endorsement of said corporation, for the use of which the funds were thus obtained from said bank; that credits were thereafter made on said note under date of March 10th, 1926, in the amount of $2,500.00 and December 10th, 1926, in the amount of $500.00 and the balance due was found by said bank and the receiver thereof to be uncollective, and represents a loss of the funds of said bank and trust estate in the amount of said balance of $1,250.00, with interest after December 10th, 1926.

(h) As supplemental to the preceding findings (f) and (g) relating to the Barb loans, the court further finds that at the time of the making of said loans by said Castetter, the said several Barbs and said Castetter were partners conducting a business under the firm name of B. & O. Planing Mill, for the financing of which the funds so taken from said bank were used, and the notes were executed by the said several Barbs in their individual names in order to conceal the fact that said Castetter was personally interested in said matters, and he fraudulently and illegally extended said credit without requiring adequate security or obtaining the consent of the directors. That said B. & O. Planing Mill, Inc., passed into the hands of a receiver and the amount which became available as the distributive share due said bank on account of its endorsement of the note of said Grace E. Barb was applied in making the credits on said note, as previously stated, and the stock collateral was found of no value.

(i) On the 15th day of May, 1924, the defendant

Castetter as cashier of said bank loaned of the funds of said bank the amount of $6,500.00 to Small, Arnold & Company, taking in evidence thereof the personal note of said company in said amount, payable to the order of said bank on or before the 15th day of September, 1924, which note, not having been paid, came into the hands of the plaintiff receiver as part of the assets of said bank, and by him has been found uncollectible.

Small, Arnold & Company was incorporated the latter part of the year 1923 for the purpose of manufacturing Ford Shock Absorbers and therefore carried on its business for about eight months when it went into the hands of a receiver and its affairs closed up. At the time of the making of said loan the Small, Arnold & Company had no property, either real or personal, of any material value which fact a reasonable inquiry into the affairs of said company would have revealed.

The defendant Castetter made said loan without first having the approval of the board of directors of said bank, and without the taking or requiring of any security except the personal note of the company.

(j) On May 12th, 1924, the defendant Castetter, as cashier of said bank, made a loan of the funds of said bank to himself in the amount of $1,309.12 and took in evidence thereof a note executed by himself for said amount payable on demand to the order of said bank, which loan was so made without first having obtained the written consent thereto of the board of directors of said bank as required by law. The defendant Castetter, as cashier of said bank, made a further loan of the funds thereof to himself in the principal sum of $7,000.00 in evidence of which he executed and delivered to said bank his promissory note under date of October 8th, 1924, in said amount, payable on demand to the order of said bank, without having obtained the written consent thereto of the board of

directors of said bank. At the time of the naming of each of the aforesaid loans, said Castetter was insolvent and he did not receive or require for said bank any security other than his personal promise as evidenced by said notes. The indebtedness represented by the notes in this finding referred to was paid in full before the bringing of this action by the receipt of said bank of the sum of $9,500.00 in settlement thereof.

(7) The court finds that during the year 1925 the North Side Milk Company sold out to William H. Roberts and Son, and went out of the milk business. Of the proceeds from the sale of its property the Tuxedo State Bank did not receive anything to be applied on any of the obligations described in the preceeding findings except as therein stated; nor did said bank receive the conveyance of any property in payment of any of said obligations or as a security therefor which has not been accounted for and credits given, leaving the sums due as stated in the foregoing findings.

(8) The court further finds that defendant, Roy E. Castetter, did not faithfully and honestly discharge his duties as cashier of the Tuxedo State Bank during the period covered by the bond in suit, nor did he exercise reasonable skill and ordinary care and diligence in the discharge of his duties as such cashier during such period, as found and stated in the proceeding findings, (a) to (i), inclusive, and by reason thereof said bank sustained losses in the amount of $34,579.32, for which no payment or settlement has been made; that prior to the bringing of this action plaintiff gave due notice and made demand of the defendant, London & Lancashire Indemnity Company of America, surety upon the bond of defendant Castetter, to make good its bond herein sued upon.

The court stated its conclusion of law thereon as follows: That the plaintiff is entitled to recover from the

defendants, Roy E. Castetter as principal, and London & Lancashire Indemnity Company of America as surety, the full amount of the penalty of the bond sued upon, with six (6) per cent interest thereon from and after the date of the bringing of this action, and being the sum of $9,142.50.

Thereafter the court rendered judgment in conformity to its conclusion of law against the defendant Castetter, in the sum of $9,142.50, together with interest and cost.

The conclusion of law is erroneous as applied to the decision of the special finding designated 6(a). The abstraction of the sum of $5,000 by appellant Castetter from the moneys of the bank; the execution of a note by A. N. Castetter and the acceptance of the same by the bank all were prior to the execution of the bond. The fact that Castetter accepted renewals of the note without security or failed to press the same for collection at maturity out of consideration for his father is insufficient to predicate a breach of the bond thereon. The court does not find that defendant Castetter violated any by-law, direction, or resolution of the board of directors in accepting renewals or in failing to press the same for collection. No facts are found that the cashier connived with the borrower to dispose of his property or that the cashier had such knowledge of the financial affairs of his father that he failed to act in good faith during the time the bond was effective as far as this particular loan was concerned. The evidence discloses that during the period of the bond and for some time thereafter, A. N. Castetter was perfectly solvent, the owner of the real estate described in the finding without any incumbrance; that defendant Castetter resigned as cashier in 1925 and no incumbrance was placed thereon until February 20, 1926.

6(b) Loan of $8,052.45 to the McCallie Brothers. We are of the opinion that Castetter violated his duties

as cashier and caused a breach of the bond in ██ this transaction. Castetter, as cashier, loaned to the McCallie Brothers, as evidenced by their notes, the sum of $8,052.45 at a time when he "The secretary-treasurer (of the North Side Milk Company) and as such officer and as cashier of the Tuxedo State Bank knew, or by the exercise of reasonable skill and ordinary care and diligence in the discharge of his duties, could have known of the financial responsibility of the said McCallie Brothers;" that they, said McCallie Brothers, had no property, real or personal other than a horse and wagon for the delivery of milk and without first having the approval of the board of directors of said bank. The finding discloses that this bank had a capital of $25,000 and that Castetter was an experienced banker.

When Castetter, as cashier, loaned such a large sum of money to insolvent borrowers as in this instance, without security and without the approval of the board of directors, a sum equal to almost one-third of the capital stock of the bank, when he knew or in the exercise of ordinary care could have known of the financial standing of the borrowers the act speaks for itself. Such an act is so negligent, careless, and reckless as to show an utter want of care or concern for the interests of the bank, a violation of his oath of office prescribed by statute and consequently a breach of his bond that he would honestly and faithfully discharge his duties as cashier. See *Wynn, Administrator* v. *Tallapossa County Bank* (1910), 168 Ala. 469, 53 So. 228; *Commercial Bank* v. *Chatfield* (1899), 121 Mich. 641, 80 N. W. 712; *Stone* v. *Rottman* (1904), 183 Mo. 552, 82 S. W. 76; *Wallace* v. *Lincoln Saving Bank* (1890), 89 Tenn. 630, 15 S. W. 448; 24 Ann. Rep. 625; *Boyd* v. *Applewhite* (1920), 121 Miss. 819, 84 So. 16; *National Surety Co.* v. *State, ex rel.* (1929), 90 Ind. App. 524, 161 N. E. 832, 3 R. C. L. p. 465; Vol. 7 C. J., p. 562,

§168; Michie, Banks and Banking, Vol. 1, p. 138, §39.
6(d) Loan of Castetter to North Side Milk Company. Castetter, while acting as cashier of the bank loaned to the North Side Milk Company the sum of $5,000. At the time the loan was made, Castetter was also secretary-treasurer of the North Side Milk Company. The loan was made without the approval of the board of directors and loss was sustained by reason of the loan. This subdivision of the finding discloses that the personal interest of Castetter was adverse to the interest of the bank and presents a situation calling for the exercise of that degree of fairness and good faith known as *uberriemae fidae. Hicks* v. *Steel* (1901), 126 Mich. 408, 85 N. W. 1221. In *Wainwright* v. *P. H. F. O. M. Roots* (1912), 176 Ind. 682, 97 N. E. 8, the court said: "If the agent acts for himself and his principal at the same time in a matter connected with the relation between them, his conduct is constructively fraudulent and if a contract be the result, it is voidable at the election of the principal. And in *Rochester* v. *Levering* (1886), 104 Ind. 562, 568, 4 N. E. 203, the Supreme Court said: "The confidential relation and the transaction having been shown, the onus is upon the agent to show that the bargain was fair and equitable. It is contrary to well settled principles of equity and to the policy of the law to permit an officer of the bank to represent both himself and the bank and in the absence of affirmative proof of full knowledge and consent, ratification or estoppel such acts are presumptively void and are voidable at the option of the bank or its stockholders and an action will lie to compel restitution to recover whatever loss the institution may have sustained." Michie on Banks and Banking Vol. 1, p. 166, §71.

Castetter's act in loaning to a corporation of which he was the secretary-treasurer thereof, a sum equal to

one-fifth of the capital stock of the bank without the approval of the board of directors was constructively fraudulent. It necessarily follows that Castetter violated his oath of office, breached his bond, and, loss having been sustained by virtue of the transaction, the surety became liable. See *Citizens National Bank of Parkersburg* v. *Blizzard* (1917), 80 W. Va. 511, 93 S. E. 338, L. R. A. 1918A 129; *People* v. *Knapp* (1912), 206 N. Y. 373, 99 N. E. 841.

6(c) Note of Barnes for $3,000. Castetter embezzled $3,000 of the funds of Tuxedo State Bank. In order to cover up the transaction he placed the note of his father-in-law of the same amount in the bank. His father-in-law had no known financial standing. The only money realized by the bank on the note was $375, endorsed on the note as having been received from Castetter under date of Dec. 28, 1926. The finding is in accord with the allegations of the complaint. The transactions were dishonest; Castetter violated his oath; he breached the bond and the surety is liable for the loss.

6(e) Loan to O'Harra, an officer and agent of the bank by Castetter, cashier, without the written consent of a majority of the board of directors being endorsed on the note at the time the loan was made as required by law. (Section 2841, Burns 1926, §11-624, Burns 1933. In *National Surety Co.* v. *State ex rel., supra,* this court said: "He (Morris) was in the active management of the affairs of the bank . . . If he had faithfully performed his duties as cashier he would have refused to make loans in violation of the by-laws, resolutions and statute. He did not do that which his duty required him to do. He did not faithfully perform his duty. He breached the bond."

Subdivisions (f), (g), and (h) of the finding regard a loan to E. E. Barb, $5,000 and Grace E. Barb, $5,000. Each of the Barbs were partners with Castetter in a building business under the firm name of B. & C. Planing Mill. Funds for the financing of the business obtained from the bank through Castetter, cashier, amount taken evidenced by notes of the Barbs in individual names in order to conceal the fact that Castetter was personally interested. Loss came to the bank by each of the loans. In each instance Castetter fraudulently extended credit to the Barbs and made such loans without the consent of the directors. As heretofore stated when a cashier loans to himself or in this instance when he loans to a partnership of which he is one of the partners and conceals the same in the manner as was done in this instance, such an act is constructively fraudulent. The bank sustained a large loss. The conclusion of law, when applied to the so-called Barb loans, is correct.

As to subdivision (i) of the finding we express no opinion, except to say that the evidence fails to support the finding.

Subdivision (j) of the finding discloses the abstraction by Castetter of over $8,000 of the banks funds; the execution of his own notes as evidence thereof without the written consent of the board of directors endorsed thereon as provided by §2841, Burns 1926; the payment of the same by Castetter, the evidence in support of the above mentioned finding is that Castetter repaid to the bank the sum of $9,500 after his reseignation as cashier and at a time when criminal proceedings against him were uppermost in his mind. We believe that the evidence fully supports the finding as to the so-called McCallie, North Side Milk Company, Barnes, O'Harra and Barb loans. The evidence discloses that Castetter was in the complete con-

trol of the bank; that the directors were mere figure-heads and displayed a woeful lack of an appreciation of their duties. It is doubtful if a more glaring example of bank wrecking by an officer sworn to discharge his duties can be found in the history of banking.

In each of the aforesaid loans, the evidence and the legitimate inferences drawn therefrom favorable to appellee disclose that Castetter had a personal interest in each of the transactions. His name often appears as endorser on the notes that carry the name of his friend or friends. A cashier of the bank must be true to his trust. He cannot serve two masters, and his personal interest cannot be paramount when dealing with the bank's money.

Section 2854, Burns 1926 (Acts 1911, p. 7, ch. 5, §11-707, Burns 1933, §8272, Baldwin's 1934) requires a cashier of a bank of discount and deposit to take an oath to "faithfully and honestly discharge his duties" and the directors are required to exact a bond conditioned that he will "honestly and faithfully" discharge the duties of his office. The bond is for the benefit of the stockholders and creditors of the bank. It is an official bond. *United States Fidelity, etc., Co.* v. *Poectker* (1913), 180 Ind. 255, 102 N. E. 372, L. R. A. 1917B, 984.

In *National Surety Co.* v. *State, supra,* this court said: "The rule for the interpretation of bonds seems to be that when a public officer gives a bond for the faithful discharge of his duties, the word 'faithful' is held to imply that he has assumed that measure of responsibility laid on him by law had no bond been given; that the object of a bond so conditioned is to get sureties for the performance of the duties of the office according to law and that everything is unfaithful which the law does not excuse."

In *Commonwealth* v. *Wood* (1903), 116 Ky. 748, 76

S. W. 842, the court said: "If the act is done with a corrupt purpose or from a corrupt motive or with knowledge by the officer of the bank that his official act is in violation of the law, or if the act is done so negligently or carelessly or recklessly as to show an utter want of care of concern and such as would be tantamount to a fraud and, therefore could be said to be fraudulently done, his act will be a malfeasance but not otherwise."

We are of the opinion that in each of the aforesaid loans, McCallie, North Side Milk Company, Barnes, O'Harra and Barbs, the acts of appellant cashier came fully within the above rule of law. In such a case, the cashier violates his oath of office and breaches the bond.

When a cashier of a bank of discount and deposit in this state, who has taken the oath prescribed by statute, performs his duties in such a negligent manner as to disclose an utter want of care or concern for the best interests of the bank and loss is occasioned by virtue of his acts, neither he nor his surety will be heard to say he has performed his duties faithfully and honestly. A cashier is not liable for failure to exercise unerring judgment in loaning the money of the bank; neither is he a guarantor of the loans. Nevertheless, he cannot assume the responsibilities of the position and exhibit an utter disregard of the duties of his trust. When, as in the several subdivisions of the findings above mentioned, he either embezzles the money of the bank or through a personal interest loans larger sums of money to corporations, in which he is personally interested without submitting the loans in good faith to the board of directors in the first instance, and in each instance loss ensues, his surety will have to respond in damages to the stockholders and creditors of the bank. See R. C. L. Vol. 3, §95, p. 465; *Boyd* v. *Applewhite, supra; Wynn, Admr.*

v. *Tallapossa County Bank, supra;* Michie Bank and Banking, Vol. 1, §39, p. 138; 7 C. J. §168, p. 562; *Citizens National Bank of Parkersburg* v. *Blizzard, supra.*

The several sub-divisions of the finding as to the McCallie, North Side Milk Company, Barnes, O'Harra, and Barb loans enumerates losses far in excess of the penalty of the bond, and therefore the judgment must be affirmed, even though the evidence fails to sustain the finding as to the A. N. Castetter and the Small-Arnold loan.

Judgment affirmed.