## Lain *v.* Lain.

[No. 19,640. Filed April 30, 1963.]

*Robert H. Orbison* and *Baker & Orbison,* of counsel, of Indianapolis, for appellant.

*Johnson & Weaver* and *Emsley W. Johnson*, of Indianapolis, for appellee.

KELLEY, J.—In this action, duly commenced by appellee against appellant, the former was granted an absolute divorce from the latter. Appellee was awarded the custody of the minor child of the parties. The court, as a part of its findings and decree, made an adjudication of the property rights and interests of the parties and rendered a judgment for alimony in favor of the appellant and against the appellee.

Appellant's sole assignment of error is that the court erred in overruling his motion for a new trial containing only the specified grounds that the decision of the court was not sustained by sufficient evidence and that said decision is contrary to law.

No issue is presented or argued by appellant pertaining to the action of the court in decreeing the absolute divorce to appellee and awarding her the custody of the minor child of the parties. The appellant contends only that the court "abused its discretion" in its adjustment of the property rights and interests of the parties "in giving to the appellee most of the real and personal property of the appellant without providing for the payment to appellant of a fair and equitable sum to compensate him therefor." Appellant proposes that the issue is twofold, viz: "1. What is the value of the property of these parties?; and 2. To what portion of such total value is appellant entitled?"

Appellant next states that the value of the property is a "fact issue" and the portion thereof to which appellant is entitled is a question of law. As to the asserted fact issue of the value of the property of the parties, appellant engages upon evidence which was in conflict as to the valuation of

the different items of said property. We must, therefore, accept only the evidence favorable to appellee as to such valuations. It follows that the answer to appellant's said first query is found in the "appellee" column of appellant's own recapitulation in his brief of the valuations placed on the "assets" by appellant and by appellee. No reversible error has been established by appellant under his said "fact issue" as to the valuation of the property of the parties.

Under his said second "issue," which appellant has designated in question form as "To What Portion of the above Assets are each of the Parties entitled?", appellant lists six points, each seemingly intended to declare a principle or rule of law which, appellant says, applied "to Facts of Present Case." Of course, it is incumbent upon the appellent to do more than just set forth what he considers the pertinent correct rules or principles of law. He must demonstrate that the trial court erred in some manner in respect to the given rules.

Appellant's Point 1 to the effect that the award by the trial court of alimony in a divorce action "must be just and proper under all the evidence" is not at all applied to the evidence. No part of the evidence is referred to, and there is made no contention or argument that the appealed from award of the court was not "just and proper." Thus, this point is deemed waived by appellant. Point 2, as asserted by appellant, is a general statement that the "fault or misconduct" of the wife should be considered in awarding her alimony. In the instant action, the court found for appellee on her complaint for divorce and against appellant on his "cross-complaint" therefor. This finding of the court "establishes the appellee's innocence of any such

wrong-doing as might mitigate her claim for alimony." *Sims* v. *Sims* (1957), 128 Ind. App. 408, 415, 146 N. E. 2d 111. Therefore, there is no efficacy to appellant's said Point 2.

By his said Point 3, appellant states that "in awarding alimony to an innocent and injured wife, the general rule is that she should receive approximately the amount she would receive on the husband's death." The appellant follows this declaration with the assertion that the trial court went beyond the limits of what is "just and proper" in "awarding her (appellee) 85% of the property owned by the parties." Said assertion is wholly unpremised, unexplained, and unapplied by appellant to the record facts pertaining to the property referred to. We are left to seek out for ourselves the pertinent factual evidence (some of which appellant has omitted from the condensed recital thereof in his brief), search therein for the facts as to the ownership, method of acquirement, devolution of title, transfers, source of the purchase money, and other controlling factors relating to said property, and then endeavor some sort of computation in an effort to determine whether appellant's stated percentage thereof was in fact awarded by the court to appellee. Upon the accomplishment of that prodigious task, we would be expected to sift through the whole of the evidence and the permissible inferences therefrom for a basis of determination of appellant's submitted proposal that the court abused its discretion in making its adjudication of the property rights and interests of the parties. It is the burden of appellant to establish error by the record and this burden cannot be evaded by an attempted placement thereof in the lap of this court.

Appellant's Point 4 alleges that "the court has a duty to take into consideration the value of the property and financial condition of the parties. This is followed by reference to some of the evidence which was favorable to appellant with a sprinkling of appellant's conclusions relative thereto. For instance, appellant concludes: that the trial court "completely ignored" the evidence of the "financial condition" of the parties; that appellee "forced out" the appellant from his work at the Lain Business College; that the court's decree took appellant's "livelihood" from him "without adequate compensation" and this was "Hardly a fair and equitable settlement" considering the facts of the case; that appellant, at age sixty (60), is "forced" into another business or job for which "he *may* not be suited." (Emphasis supplied). However, appellant does not allude to the fact that the evidence was in conflict nor does he assert or claim that the referred to evidence was undisputed. In short, appellant entirely fails to establish that the court did not consider the "value of the property and financial condition of the parties" in arriving at its adjustment of the property rights and interests of the parties.

As Point 5, appellant declares that "In the adjustment of property rights of the parties to a divorce action the court may allot to one spouse property previously settled on the other." Following that declaration appellant makes no showing of any kind nor any reference to any evidence to show that he "settled" any property on the appellee. Here, in pertinent substance, is appellant's complete statement under his Point 5: *"Whatever the reason* for the transfer of property from appellant to appellee . . . , there is no dispute that appellant *did transfer* to ap-

pellee two-thirds of the business, two-thirds of the real estate of the business and the entire interest in the home property. Under all of the circumstances the lower court could and should have returned a part of that property or a reasonable cash judgment to appellant, which it failed to do." (Emphasis supplied). The entire statement amounts to no more than appellant's own conclusion as to the matter. However, appellee points out in her brief, and the same is uncontested and undenied by appellant, that the facts show that the transfer of the business and the real estate of the business was a "negotiated business deal, and that the appellee also transferred assets into the business at the time the stock was divided"; and, further, that the old home of the parties was sold and the proceeds "split" by the parties and the purchase price of the new home "was paid by the appellee with her own funds," and appellant "had no interest in the home property to transfer to the appellee." We find no error established by appellant under said Point 5.

As Point 6 appellant asserts that "alimony is awarded in Indiana for the purpose of making a present and complete settlement of the property rights of the parties. It does not include future support for the wife, nor is it intended as a medium for providing financial compensation for injured sensitivities during marriage." The trial court gave no alimony to appellee and made no provision for the support by appellant of the minor child of the parties. However, the court in its decree ordered the appellant to transfer and assign to appellee "the 325 shares of capital stock in Lain College, Inc., presently registered in his name." Apparently, this order of the court as to said stock is the source

of the chief complaint of appellant. He spends much time relating that he never had "any intention" to give appellee "the business or the home"; that "*he considered* it a partnership"; and that when the stock was issued appellee obtained two-thirds of it "by pressure." We have already pointed out in the discussion of Point 4, above, that the evidence concerning these matters was in conflict. Appellant makes a touching argument in his own behalf concerning his viewpoint and conclusions of certain of the evidence but we are bound by the court's findings on contradictory evidence and we are not authorized under such evidence to substitute any conclusions of our own for those of the trial court.

The "business" and "real estate of the business" which appellant refers to under his Point 5, above, belonged to a corporation known as Lain College, Inc. There were 1,000 shares of outstanding stock in said corporation, which, at the time of the trial, was held as follows: Appellee, 671 shares, appellant, 325 shares, David Lain, son of the parties, 2 shares, and Thalia Lain, daughter of the parties, 2 shares. There is no finding by the trial court as to the value of the said stock. Appellant places no value on the stock but in one part of his argument stated that "these shares were not worth too much unless the corporation were to be dissolved." Appellee says that "if the court thought it (the stock) had any value at all in view of the recent record of the corporation, . . . any value in excess of . . . $53.40 (per share) would have been a gross over valuation." (The bracketed words are ours). Measured by the valuation per share suggested by appellee, appellant's 325 shares, which the court ordered transferred to appellee, would have a total valuation of $17,355.00. In the finding

next following the finding that appellant should transfer his 325 shares of stock to appellee, the court found that appellant should have judgment against appellee "for alimony" in the sum of $27,500.00, payable $2500 within 30 days following the decree and the balance at the rate of $200 per month, commencing March 1, 1961. In the absence of any explanation contrariwise by appellant, we feel justified in concluding that the court, while granting the divorce to appellee, entered the said judgment against appellee as a financial adjustment of the property rights of appellant in said 325 shares of stock.

We are fortified in our said conclusion by the fact that there is evidence in the record that the parties were married in 1929; that they had four children who were almost wholly supported and educated by appellee; that appellant dissipated his money, did not know "where his money went," and allowed his insurance to lapse; that all of the property outside of the business known as Lain College was purchased with money earned by appellee; that at the time of the trial the business of said Lain College "was not making any money with which to pay salaries." Under these conditions and circumstances, and others which it seems unnecessary to here recount, we fail to find that the trial court, by its said order relative to said transfer of appellant's stock, provided for any "future support" of appellee or "intended (the same) as a medium for providing financial compensation for injured sensitivities (of appellee) during marriage" as suggested by appellant in his Point 6. (Bracketed words supplied). We are indelibly impressed that the proven unsatisfactory and unsettled status of the college and its administration; the exhibited energetic ability of the appel-

lee to cope with such a situation and the demonstrated marked inability of appellant to meet the demands thereof; and the pronounced and deep-seated marital difficulties of the parties, possessed such weight and influence, under all the unfortunate circumstances of the marital relationship of appellant and appellee, as to impel the trial court to make such provision relative to the saving and further maintenance of the college as the court, under such circumstances, apparently deemed would be most conducive to the best interests of the parties and their minor child. Appellant's stated position that the court abused its discretion in the premises is without convincing quality.

Lastly, the appellant claims error in the court in its finding that "the written agreement entered into by . . . parties on the 29th day of June, 1955, regarding the following described real estate . . . be cancelled and should be declared to be of no further force and effect as between or against the parties . . . ." Appellant's basis of asserted error is that "There is not one scintilla of evidence in the record to show that this written agreement dated June 29, 1955 ever existed." If no such written agreement ever existed between the parties, as appellant avers, then it is apparent that appellant suffered no harm, damage, or prejudice by reason of said finding. And appellant makes no contention or claim that he was in any way or manner harmed or prejudiced by such finding. There being no evidence to support the court's said finding and there appearing no issue, contest or dispute between the parties regarding any such written contest as is referred to in the said finding, it follows that the finding was immaterial and without any efficacy or effect upon the final

adjudication rendered by the court. Appellant does not contend nor make any showing that but for such finding the result of the trial and the judgment appealed from might have been different. A judgment will not be reversed by reason of an immaterial finding unsupported by evidence and without any prejudice to the appellant. *Downey* v. *National Exchange Bank* (1911), 52 Ind. App. 672, 96 N. E. 403; *Schmidt* v. *Archer et al.* (1887), 113 Ind. 365, 14 N. E. 543; *Castetter* v. *Barnard* (1932), 98 Ind. App. 210, 183 N. E. 681; *McCaslin* v. *Advance Mfg. Co.* (1900), 155 Ind. 298, 58 N. E. 67; *Coburn et al.* v. *Sands et al.* (1897), 150 Ind. 141, 48 N. E. 786; *Weaver* v. *National Casualty Co. of Detroit, Michigan et al.* (1924), 81 Ind. App. 421, 143 N. E. 608.

We have considered all points of error properly asserted, claimed and contended for by appellant and find no reversible error established by him.

Judgment affirmed.

Mote, P. J., Hunter, Pfaff, JJ., concur.

NOTE.—Reported in 189 N. E. 2d 838.